GAMBLE & JOHNSTON vs. JOHNSON, ET. AL.

| 9 | 605 |
|---|---|
| 53a | 645 |
| 9 | 605 |
| 114 | 371 |

1. From the petition of the defendants, it appears that the sale by Gamble to Julius D. Johnston, was made before the bill was filed by Gamble. Johnston could not then be made a party by the answer. Where the proper parties are not made, and it does not appear on the face of the bill, it should be shewn by plea. If a complainant assign his interest *pendent lite,* the assignee must be brought in by motion.

2. Even if Johnston could have been made a party, no decree for the rents and profits could be rendered against him, the decree in favor of Gamble his vendor, not giving him any rents and profits.

Gamble & Johnston vs. Johnson et al.

3. The declaration of a vendor, before he purchased the lot in dispute, are not part of the *res gestæ*, and are not admissable as evidence of the consideration of the sale from him to his vendee, though they are evidence to shew his indebtedness to his vendee.

4. A letter written by a vendor after a sale by him, is evidence against him, though never sent to the person to whom it was directed ; but it is not evidence against the grantee.

5. The declarations of a grantor made at the time of executing a conveyance, are part of the *res gestæ*, and are evidence to show the intent of the grantor in executing the deed, as against him, and all persons claiming under him.

6. An omission in an answer to deny a fact charged in the bill, is not an admission of the fact, but it must be proved. Omissions and evasions in an answer, are however, proper sub-subjects of animadversion, and calculated to weaken the force of the answer.

7. When an answer is contradicted in any one important particular, it is deprived of the weight given to an answer.

8. It is improper to instruct a jury that they must believe the answer, unless they believe that the respondent "*swore falsely.*"

9. The making of issues in a proceeding in chancery, is a matter of discussion with the chancellor, and should never be ordered, when, in the opinion of the chancellor, the answer is entitled to the same weight as two witnesses, or one witness and corroborating circumstances.

10. When an issue is made, the answer is not evidence for the defendant, unless so ordered by the chancellor, or read by the plaintiff as an admission.

11. An answer not responsive to a bill is not evidence, when replied to, nor is a fact stated by a party, but not upon his own knowledge, entitled to the same weight as one stated upon his personal knowledge.

12. A voluntary conveyance without consideration, or merely for love and affection, made by one who is insolvent, is void as against creditors, although the grantee were ignorant of the insolvency, and innocent of the fraud.

## APPEAL from St. Louis Circuit Court.

Spalding and Tiffany, for Appellants.

### POINTS AND AUTHORITIES.

1. The letter of Madison Y. Johnson, offered in evidence by the complainants below, tending to prove the first issue, to-wit: whether the deed of the lot in question, made by J. H. & M. Y. Johnson, was made with the intent to defraud their creditors, was improperly excluded by the court. 2 Starkie's Evidence, 29, that "all a man's acts and declarations shall be admitted in evidence whenever they afford any

presumption against him." 2 J. C. R. 302; 7 Cowen, 301; 12 Wend. 299, as to other transactions being admissible in such cases.

1. This and other authorities, show that it was admissible on general principles.

2. And the fact that it did not appear, or rather was not *proved* to have been sent to the person to whom it was directed, does not justify its exclusion; 3 Starkie's Ev. 1433. "Writings found in the prisoner's possession, but not published, if plainly by their contents, with a treasonable design, are evidence of such a design, though not published." 1 Burr Rep. 644, Rex v. Hensey, "rough drafts of letters written by prisoner, found in his bureau, admitted as evidence."

II. The testimony of Chase, that before said house and lot were purchased of Shepherd by the Johnsons, James H. Johnson told him that *"he was going to have the house bought for his mother with what he owed her,"* was improperly admitted by the court below.

1. That fact, that James H. Johnson made that declaration previous to 4th September, 1835, the date of Shepherd's bond for the lot, had no tendency to prove him innocent of the fraud, if any, in making the deed on 25th April, 1837, to his mother and sister, especially as the bond, and deed by Shepherd, were to J. H. & M. Y. Johnson, in their own names, and apparently for their own benefit.

2. Nor was it admissible as proof of indebtedness to his mother, as it admits no amount, and on it, no amount of debt could be established; nor is there, independently of the answers in chancery, any evidence of a debt.

III. The sixth instruction asked by the complainant below, was improperly refused.

1. That an answer responsive to bill, is evidence for the defendant, and generally, in order to a decree against him, must be disproved by more than one witness; but may be disproved by its own contradictions, or by circumstances alone ; but when not directly responsive, the answer is not evidence. Greenleaf's Evidence, 295,-'6,-'7, sections 258, 251,260. That two witnesses and circumstances, or mere circumstances alone are sufficient to convict a culprit of perjury, or to disprove an answer in chancery. 2 John Ch'y. Rep. 92. "Though one witness against the direct and positive averment of the answer, be not sufficient ground for a decree, yet if that witness be corroborated by circumstances, it will be sufficient, and the answer may in itself, contain the circumstances giving greater credit to the witness." 9 Cranch Rep. 153, at page 160. That "or one witness with probable circumstances will be required to outweigh an answer asserting a fact

responsive to a bill, is admitted : But certainly there may be evidence arising from circumstances stronger than the testimony of any single witness.   The weight also of an answer must depend in some degree, on the fact stated.   Where the defendant cannot know the fact, his an- swer, though responsive to the bill, is not entitled to the same weight." 8 Mo. Rep. 19, Rountree v. Gordon.   An answer in chancery, false in one thing, is not entitled to credit in others.   9 Vesey, p. 275, at pages 282-'3, stating general rule as to weight of the answer as testimony, &c., decided against defendant ; his answer outweighed by witness and circumstances.   11 Wend. Rep. 343.   Decision of vice chancellor affirmed by chancellor in court of errors ; though reversed, yet sustain- ed by chief justice, the only judge present, and a large minority, that the answer destroyed its own credibility by circumstances, &c.   1 Da- na's Rep. 474, where the answer is responsive, but not on the personal knowledge of the defendant, the rule of two witnesses to disprove, does not apply.   9 Cranch, 153.

IV.  The seventh instruction of the complainant below, should have been given.

1. Like the sixth, it pointed out a circumstance, which if it existed, (and whether it existed or not, was left to the jury) certainly ought to lessen the weight of the answer in testimony.

2. It calls upon the court substantially to say, that if the answer were found by the jury to be untrue in the points mentioned, they were au- thorized to give less credit to the answer, than by law they were other- wise bound to do.

V.  The first instruction given for the defendant was wrong.

1. It assumes that in the matters mentioned therein, the answer was responsive to the bill, which was not the fact.   1 John. R. 580, at page 589, Pendleton, counsel, alledges that the answer was only responsive to the bill, and shows how : and at page 590, Spencer, justice, decides that the bill alledging that the consideration was a full and valuable one, the answer should have been in the affirmative, or negatively merely, and was a departure in saying the note was *usurious;* and of course the defendant was bound to prove the fact of usury, and his answer is no evidence of it.   1 Munford's Rep. 373.   Roane says that to permit an executor when called on to account, and say what were the particu- lars and amount of the estate to swear it away, would be monstrous, &c. 1 Dessaussure 589.   Executor's swearing to payment of legacy, no proof thereof, especially as he is swearing to the act of another. 5 Har. & John. 372; 1 Wash. Rep. 224.

2. That instruction gives a summary of the answer of Hannah John-

son, and tells the jury to believe it unless found *false* by two witnesses. Under that instruction, the jury would naturally think they must believe all she says in her answer, of the subjects mentioned in the instruction.

3. It puts the matter to the jury improperly. That they could not find for complainant without its being proved that Hannah Johnson had "*sworn falsely*," for the jury might think she had sworn *mistakenly*, not "*falsely*;" and the phraseology of the instruction requires proof by two witnesses that she was *perjured*. This was calculated to give a wrong impression, and to mislead.

VI. The second instruction is liable substantially to the same objections as the first.

VII. The third instruction of defendants is wrong.

1. It applies the same rule to the *whole* of these answers, not merely to the points enumerated in the first instruction, but says in substance, that their answers to the charge of the bill, are to be held true unless disproved by two witnesses, &c. 6 Mo. R. 267, 279.

2. It leaves it to the jury to find out what portion of their answers do apply to charges of the bill; thus leaving the matter of law to the jury. 6 Mo. Rep. 267, 279.

3. This instruction is calculated to mislead the jury. They naturally infer from it that the same weight is to be given to each answer, to wit: that of two witnesses, so that there would be what is equivalent to eight witnesses swearing to the same story, set up in the answer, which must be disproved by twice as many.

4. It is wrong in requiring the jury to give the same credit to the answer of each, whether they knew the facts personally or not, as it is evident that they did not of their own knowledge, know all that is stated in their answers.

VIII. The fifth and sixth instructions of the defendants are wrong in declaring that the words and acts of James H. Johnson, and Madison Y. Johnson, or either of them, could not prejudice the rights of Hannah or Isabella Johnson, unless they, Hannah and Isabella, at the time, were knowing to, or assenting to the same, or have since assented to it, and in excluding Polk's testimony.

1. Because Hannah and Isabella claimed under J. H. and M. Y. Johnson, through their deed.

2. On the first issue, the only inquiry was, whether that deed was made to defraud the creditors, and the acts and sayings of the grantors, were the only instruments of evidence to show their fraud in making it.

3. Because if the deed were made without a good and valuable con-

sideration, it would have been void, if intended by the grantors to defraud creditors, whether the grantees were privy to the fraud or not; and it belongs to the jury to determine whether there was a valuable consideration in making that deed.

4. The instruction therefore tells the jury that there was a valuable consideration for the deed, and prohibits the jury from passing on that fact.

5. Because the instruction requires both Hannah and Isabella, to assent to words or acts of the grantors in the deed, in order to be prejudiced; whereas Isabella paid no consideration, was a volunteer, and her assent would have nothing to do with it. Besides she was a child, and could not assent.

6. The instruction is wrong in this also, that it requires the "assent" of Hannah and Isabella to the *words* and *acts* of J. H. & M. Y. Johnson, in order that these *words* and *acts* should prejudice them; whereas the fraud of the Johnsons in making the deed, would affect the rights of Hannah and Isabella, if Hannah had notice of the fraud at the time of taking the deed. *Assent* was not necessary to the *acts* or *words* manifesting the fraud, or even knowledge of such acts or words, if Hannah were chargeable with a knowledge of the *fraud*. 1 Story's Equity, 363, sec. 369; 1 Story's Equity, 341, sec. 349, as to general doctrine; 1 Story's Equity, 345, sec. 353, &c.; 1 Story's Equity, 355, 359; 1 Story's Equity, 354 sec. 362; 3 Bacon's Abr. 311-'12; 8 Wheat. 228; Roberts on Fraud, Con. 13, 14, 15, 16, 17, 18; 4 Cruise 519, 531, sec. 55; 3 Mo. R. 302; 4 J. C. R. 450.

These reference show that voluntary conveyances by a person indebted, are fraudulent and void, as to creditors; and that conveyances for valuable consideration, when made to defraud creditors, and the grantee is cognizant of that fact, are void, not being *bona fide*, and that the want of a fraudulent intention on the part of the grantee makes no difference.

7. What J. H. Johnson said to Polk, *would* prejudice Hannah Johnson, provided he made the deed with the intent to defraud his creditors, and she at the time had notice of the fact, as in that case there would be wanting *bona fides*.

15 John. Rep. 162; 5 Cowen, 67, as to Voluntary Conveyances.

12 John. Rep. 320; 12 Wend. 41. Conveyances void if for full value, if value, if not *bona fide*.

11 Wend. 533. Even where it is *bona fide* on the part of the grantee and for full value, but is for previous debt, it is void.

IX. The instructions were conflicting, and calculated to mislead the

jury; and the first and second ought not to have been given, as the jury could not act properly upon such a rule. They could not apply it; the chancellor alone is able to apply it.

X. The matter of the bill of review was improperly taken as confessed against the complainant, Gamble.

1. Because no deed, *pro confesso*, is authorized against a complainant.

2. Because if it could have been taken at all, it should have been in the suit of the Johnsons vs. Gamble & Johnston.

3. Because if the matter of the bill of review could have been taken pro confesso, the decree should have been a decree *nisi*. 1 Mo. R. 3.3.

XI. The motion to set aside the order appointing a commissioner, should have been sustained for the reasons therein set forth, to-wit: that in the suit of Gamble vs. the Johnsons, it was illegal to proceed against the complainant, Gamble, as if he had been a defendant.

XII. The court improperly overruled the motion, to hear testimony at the final hearing.

XIII. The final decree was wrong.

1. It should not have been against Julius D. Johnston, who was party to the suit; or if he were, not in such a position as to be proceeded against by the defendants in the same, in the manner adopted. If he were co-defendant with the other Johnsons, they had no right to a decree against him; and if he were complainant, the defendants could not have a decree for rents against him.

2. Julius D. Johnston was neither complainant nor defendant in the suit in which the decree is entered against him.

1 Smith's Chancery, 423. That decree binds only parties to the suit.

1 Smith's Chancery, 293, Ib. 301. Addition of parties by amending the bill.

3. The bill of review was a mere statutory proceeding to open the decree and let in the defendants to defend. When this was accomplished, it was *functus officio*. Story's Equity Pleading, 320, sec. 403.

2 Smith's Chy. 50. That bill of review is in nature of a writ of error, and lies only after a decree has been enrolled, so that it is too late to apply for a re-hearing. Revised Code of 1835, Chancery Practice.

LESLIE & TODD, for Appellees.

Gamble & Johnston vs. Johnson et al.

POINTS AND AUTHORITIES.

I. The court did not err in excluding the letter of Madison Y. Johnson.

1. Because the object of the bill was to destroy and nullify the title of the grantees. Hence the acts and declarations of the grantors sub-sequent to the conveyance, were inadmissable to affect the title of the grantees. This letter is such, being written July 21st, 1837, the conveyance being made April 25, 1837. It was also the act of only one of the grantors not proved to have been known to the other, or the grantees. That the subsequent acts and declarations of vendors cannot be admitted in evidence to affect the title of the vendees not proved to be assenting to the same. Vide Cowen & Hill's notes to Phillips' Ev., part 1, p. 655, and following, 1 Mass. Rep. 165; 12 Mass. Rep. p. 439.

2. Because the letter was never sent.

II. The court did not err in admitting the statements of James H. Johnson to Chase, at the time he was negotiating for the purchase of the lot, to-wit: that he was going to buy the lot for his mother with what he owed her.

Because they were of the "*res gestæ.*" Cowen & Hill's notes to Phillips' Evidence, part 1, p. 592, and following. 11 Pick. Rep. p. 362, 469.

III. The court did not err in giving the defendant's instructions.

*Instruction* 1, correctly declares the rule of law as to the effect of a responsible answer. 8 Mo. Rep. p. 19; 2 Story's Equity Jurisprudence, p. 743; 1 Cow. Rep. p. 744, n. *a.*

The answer of Hannah does say that she had separate means of her own, and that out of the same she furnished the means for purchasing the lot, and that she acquired it *bona fide*. See her answer. See also 3 Eng. Cond. Chy. Rep. p. 31. And this was responsive. For the bill charges that she "was without any separate fortune of her own;" that the conveyance was made to her "*without any real consideration whatever,*" and fraudulently, and asks if anything were paid, then "*how and in what manner?*" Or in other words, the bill charges that Hannah had nothing, paid nothing, but obtained the conveyance fraudulently. And she answers she did have money and enough; that with it she bought the lot, and that, too, fairly.

As to what an answer should contain, and when responsive, vide Mitford, p. 109, n. 1; 1. J. C. R. 103; Story's Eq. Plead. p. 654 and following; 3 Paige's Ch. Rep. p. 212; 6 Wend. Rep. 22. The case in Wend. is quite in point.

*Instruction* 2 was rightly given. Because the answer of Hannah does entirely meet, and falsify the charges of want of consideration, and of fraud; and as to the effect thereof, it has been already shown that the rule of law is correctly enunciated. If these premises be true, then the conclusion of said instruction follows of course.

*Instruction* 3 was rightly given. Because the rule of law therein stated as to the effect of the answers of James H., Madison Y., and Joseph Johnson to the *charges of the bill,* is correctly laid down as already shown. And it may be here remarked, that, in this instruction, the answers, so far as responsive to the charges of the bill, are given to the jury under the said rule of law as to their effect, without any specification, or condensation of their substance and tenor. So that if there was error in the court in stating in the first instruction the tenor and substance of the answer of Hannah, it does not exist in this. Now these answers do deny the charges of the bill, that Hannah had nothing; that the conveyance was made without any valuable consideration, and for a fraudulent purpose, and do aver the contrary with sufficient particulars. And if the jury believe their answers true, then the whole equity and foundation of the bill are destroyed. That the jury did, their verdict proves.

*Instruction* 4 was rightly given. Reference to authority is not deemed needful to show this.

*Instruction* 5 was rightly given. See authorities under point I.

*Instruction* 6 was rightly given, on the assumptinn that the 5th was.

*Instruction* 7 was rightly given. Reference to authorities is deemed useless to show this.

IV. The court did not err in refusing the 6th and 7th instructions of the complainant. It is not error as to the 6th; because.

1. It is immaterial from whom, or where Hannah got her private means.

2. Because the bill does not charge that if she had private means, she so obtained them as not to make them a valuable consideration to her grantors, as to their creditors, nor does it ask her from whom or where, nor lay any foundation for such an interrogatory. And even if the bill had, as no exception was taken to the answer, it is to be deemed satisfactory to the complainant, and that he did not wish, or think it advisable to insist upon her saying from "whom" or "where." Any supposed doubt or obscurity as to a particular part of an answer, cannot be deemed a circumstance to impeach it in favor of the party answered, when, having the power, he does not express dissatisfaction, or attempt to cause the doubt removed, or the obscurity cleared away. A

contrary rule of law would serve to entrap the honest, and expose him to the infamy of convicted, or the cloud of suspected perjury, by reason of the honest mistake, omission, or ignorance of himself, or solicitor.

3. Because the desired effect of instruction 6th is secured in the 2nd of the complainant's instructions.

The 7th instruction was properly refused.

1. Because there was no foundation for it, so far, at least, as the title of Hannah and Isabella was concerned.

2. Because the purport of this instruction is contained in those given. 3 Mo. Rep. 339.

V. The instructions, taken together as a whole, contain a correct exposition of law applicable to the case, and were sufficiently ample and particular for the guidance of the jury to a just and legal conclusion. This is sufficient. 7 Mo. Rep. p. 128   8 Mo. Rep. p. 339.

VI. There was no error in refusing the motion for a new trial.

1. Because a court of chancery is not obliged to direct an issue. (Blakes' Ch. p. 374; 2 Mad. Chy. 474; 2 Smith's Chy. p. 75,) and when it does, it is to inform its own conscience.   (2 Ves. Sen. p. 553; 9 Ves. p. 169; 11 Ves. p. 52; 3 Swanston, 344-5; 2 Paige Rep. 487-8.)   And whether it will grant a new trial, is, with it, a matter very much of discretion.   (2 Ves. Sen. 553; 9 Ves. p. 169; Blakes' Chy. 375; 2 Mad. Chy. 480.)   And it may refuse or grant a new trial when a court of law must do otherwise.   (2 Ves Sen. 553; 9 Ves. 169; 11 Ves. 52; 3 Swanston, 345, 3 Eng. Cond. Chy. Rep. 31.)   And on a motion therefor, if, with all the testimony, together with the instructions and pleading, before it, it shall be satisfied with the verdict, it may refuse a new trial, although improper testimony admitted, or proper excluded, or proper instructions refused, or the effect of the answers inaccurately stated.   9 Ves. 169; 11 Ves. 52; 3rd Swanston 345; 3 Eng. Cond. Chy. Rep. p. 31; 2 Paige Chy. Rep. p. 487-8; Blakes' Chy. 376; 2 Mad. Chy. 481; 2 Smith's Chy. 84.

2. Because the verdict is amply sustained, at least so far as the rights of Hannah and Isabella are concerned, even with the letter in and the instructions 6th and 7th complainant given.   The evidence would not by any means greatly preponderate in favor of complainant as is required.   6 Mo. Rep. page 61.   And in chancery the complainant must fail even though the testimony were equally balanced.   6 Paige, 583. So that neither in law nor in equity was the complainant entitled to a new trial.

3. The complainant could not be benefitted by a new trial.   7 Mo. Rep. 494.

That it does not follow that because love and affection are expressed in a deed with a money consideration, that it is fraudulent as to creditors. See 11th Wheat. Rep. 199; 1 Rand. Rep. 219; 7 Pick. 533.

VII. The court did not err in acting on the supplemental matter of the bill of review. Story's Equity Plead. p. 334; Mad. Chy. Prac. p. 542. For Julius D. Johnston had become a party interested, and therefore should be made a party. Story's Eq. Pl. p 334; Mitford, p. 89; 7 Paige Ch. Rep. p. 287.

If the bill were defeated, the defendants were entitled to be restored to every thing they had lost by the acts of Gamble and Johnston. This could not be done, unless the rents and profits of the property during the ouster, and the possession thereof wrested away, were restored. Besides, when the court of chancery once gets jurisdiction of a case, its subject matter and the parties interested, it will and ought to do complete justice to all the parties, and from its abhorrence of litigation and multiplicity of suits, it will not dispose of a part, and for the settlement of the rest turn the parties over to the other courts. 10 J. R. p. 587; 4 J. Ch. Rep. p. 609; 1 Story's Com. on Equity, p. 82 and following; and 436 and following.

VIII. The court did not err in taking the supplemental matter of the bill of review as confessed against Gamble. For it was not answered, pleaded or excepted to. Also, because the bill of review prays that the court will hear the supplemental matter when it re-hears the original.

IX. The court did not err in refusing to set aside the order of reference, for the reasons under point VII.

X The court did not err in refusing the motion of Gamble, on the final hearing, to hear the testimony offered by him to support the allegations of the bill.

No additional testimony was offered, and the court had already considered fully the testimony on the motion for a new trial, and passed upon it.

XI. There was no error in making Julius D. Johnston a party to the final decree, for he was made a party to the proceedings under the bill of review, and duly brought into court.

XII. It was properly decreed that Julius D. Johnston should pay the money decreed, and restore possession of the property: for the amount was agreed to, and the possession, as alleged in the bill of review, never denied. Also for reasons under point VII. The decree shows both Johnston and Gamble before the court, and parties participating.

XIII. If any error in any part of the decree below, it is deemed com-

petent for this court to render such decree as should have been rendered below.

SCOTT, J., delivered the opinion of the Court.

This was a suit in equity commenced in June, 1840, by Gamble, against Johnson and others, for the purpose of setting aside a conveyance as fraudulent against creditors. The bill states that James H. and Madison Y. Johnson, partners in carrying on the business of druggists, were the owners in fee of a lot in St. Louis, which was conveyed to them by D. Shepard, by deed dated 22d April, 1837. That the Johnsons being indebted to J. Folger, he, on the 13th October, 1837, sued out an attachment against them, which was levied on the lot in controversy. That on the 10th May, 1838, judgment in that suit was rendered for Folger, on which an execution issued, under which, on the 10th July, 1838, the lot was sold to Gamble for the sum of $1250. That at the time of the commencement of the said suit against the Johnsons, they were utterly insolvent. That whilst in this situation, and with a view to defraud their creditors, on the 25th April, 1837, for the pretended consideration of natural love and affection, and for the sum of $5000, the Johnsons executed, to their mother, Hannah Johnson, a conveyance of the lot in dispute, to be enjoyed by her during her natural life, with remainder in fee to Isabella Johnson, her infant daughter. That Hannah Johnson, at and before the time of the said conveyance, was in poor circumstances, without any separate fortune of her own, and unable to pay the sum set forth as the consideration for the deed. That her husband, Joseph Johnson, was at that time, and long previous had been insolvent. After making J. H. and M. Y. Johnson, the sons, and Joseph Johnson, the husband, Hannah Johnson, the mother, and Isabella L. Johnson, the daughter, parties, the bill prays that the deed of J. H. and M. Y. Johnson, to their mother and sister, may be set aside.

A summons was issued on this bill, which was returned that none of the defendants were found, and thereupon an order of publication was awarded. At the November term, 1840, the court appointed T. B. Hudson guardian *ad litem* of Isabella Johnson, the infant, on motion of the complainant; and, the order of publication having been proved, a decree *nisi* was taken against all the other defendants. Hudson, the guardian of I. Johnson, put in an answer disclaiming all knowledge of the matters contained in the bill, and requiring proof of the same.

Afterwards, at the March term, 1841, the court directed the com-

plainant to file his allegations as to the matter of fraud alledged in the bill in the execution of the deed by J. H. and M. Y. Johnson to their mother and sister, and touching the privity of the said grantees to the fraud. These allegations being submitted to a jury, they found that the deed was without consideration, but that Hannah and Isabella Johnson were not privy to any fraud committed by the Johnsons in making the deed. On this a decree was rendered in favor of the complainant, and the deed was set aside as fraudulent against him.

Afterwards, at the November term, 1844, Albert Todd, having been appointed guardian *ad litem* of Isabella Johnson, the defendants filed a petition against Gamble, the complainant, and Julius D. Johnston, setting forth substantially the proceedings above had against them, and that after the sale of the lot to Gamble, he went into possession thereof, and there, remained, receiving the rents and profits until October, 1839, when he sold and conveyed the said lot to J. D. Johnston, who has ever since been in possession thereof, receiving the rents and profits, which are worth $500 per annum; and alledging that the foregoing final decree is wrong and unjust, because according to the best of the knowledge, information, and belief of the said Joseph Johnson, Hannah Johnson, and Isabella Johnson, the said J. H. and M. Y. Johnson made the said deed *bona fide*, and for a valuable consideration, and without any intent on the part of the grantors to hinder and delay their creditors; and that Hannah Johnson paid a valuable consideration, and was not knowing to, or privy to any fraud on the part of the grantors in making said deed; and praying that the said Gamble and Johnston may answer their petition; that the suit and proceedings in said cause may be revived against the petitioners, or that the said Gamble and Johnston show good cause to the contrary, and that the decree may be reviewed, reversed, and set aside; that the cause may be heard on the supplemental bill, that J. D. Johnston may be made a party, and that an account of the rents and profits of the lot may be decreed, &c., &c. Revised code 1835, page 516.

Upon this a subpœna was issued, which was served upon Gamble and Johnston.

Afterwards, at the November term, 1844, a motion was made by the defendants in the original suit, to set aside the decree entered therein, and the decree was afterwards set aside.

Afterwards in January, 1845, the defendants put in their joint answer to the original bill, in which the two Johnsons admit their indebtedness at the time of the conveyance to them by Shepard, and at the commencement of the suit by Folger, and at the same time to various persons

to a considerable amount, but had debts due to them greatly more than sufficient to pay all demands against them, and from their inability to collect their debts they were compelled to make an assignment.  J. H. and M. Y. Johnson admit that they executed the deed to their mother for the lot in dispute.  All the defendants deny that it was made upon a pretended consideration, and alledge that $3500 was the consideration for the same, which sum Hannah Johnson had advanced and lent to J. H. Johnson, to carry on the business of the firm, with the express understanding that when said Hannah should select a house and lot in St. Louis, suitable for a residence, the money should be applied in purchasing it.  That the house and lot mentioned in the bill having been selected by the said Hannah, it was purchased from Shepard on a credit for part of the purchase money, and a title bond was executed to J. H. and M. Y. Johnson, conditioned to make them a deed when the whole of the purchase money should be paid.  The money having been paid, a deed was executed to J. H. and M. Y. Johnson for the lot, who immediately thereafter conveyed it to their mother.  That she had separate means of her own, given to her for her own use and benefit; but that Joseph Johnson, her husband, was unable to pay his debts, having failed in business.  That the consideration of five thousand dollars mentioned in the deed was inserted without the knowledge or assent of Hannah Johnson, and that the real consideration was $3500.  All fraud is denied, and it is maintained that the deed was not made with a view to defraud creditors.

To this answer, a replication was filed, and the court directed the following issues, to-wit:

1. Whether the conveyance of the lands and tenements mentioned in the complainant's bill, by J. H. and M. Y. Johnson to Hannah Johnson for life, with remainder in fee to J. L. Johnson, was made or contrived with the intent to hinder, delay, or defraud the creditors of the said J. H. and M. Y. Johnson.

2. Whether the purchase of the lot in controversy, conveyed by the said J. H. and M. Y. Johnson, to Hannah and Isabella Johnson, was made bona fide, and upon a valuable consideration on the part of the said Hannah.

These issues were found for the defendants.  The supplemental matter of the bill of review, was taken for confessed against Gamble and Johnston, and a commissioner was appointed to take an account of the rents and profits.

Evidence was given of the great indebtedness of the Johnsons about

the time of the execution of the deed, by judgments and otherwise.    In September, 1837, J. H. Johnson took the benefit of the insolvent laws.

Lott, a witness, testified that he was a partner of the Johnsons,—he went into business with them in 1836, as a co-partner ; he put into the concern nine or ten thousand dollars.    That he quitted it in the fore part of April, 1837.    That the Johnsons were to take all the property, and to pay all the debts.    They executed their notes to him for $11,500, payable in three equal instalments,—a dividend was paid only on one of the notes.    They promised him security, but never gave it.    He expected the house and lot to be conveyed as security, but it was about that time conveyed to Hannah Johnson.    Hannah Johnson sent for witness, and she said she felt troubled in mind about affairs, and told him not to feel uneasy, that she would pay him, and that the property was made over to her.

M. Brotherton, the sheriff of St. Louis county, testified that in Oct., 1837, he had an attachment against the goods of the Johnsons.    There were also attachments against their effects in the hands of constables, and there was an assignment of the property.    In the fall of 1837, all the family of the Johnsons left St. Louis.

T. Polk testified that he was called upon to draw the deed from J. H. and M. Y. Johnson to H. and I. Johnson.    That J. H. Johnson told him at the time of drawing the instrument, that he wanted the lot to be conveyed to his mother for life, with remainder to his sister.    Said he was prosperous, and was paying for the education of his sister. That the consideration of five thousand dollars was inserted at his, Polk's, suggestion, as proper to negative any resulting trust.    Demands against the Johnsons were placed in his hands for collection, but he never did any thing with them, as he considered that they were desperate.

A letter written by M. Y. Johnson, bearing date 21st July, 1837, and addressed to Dr. Sam'l L. Adams, who was called *uncle*, New Washington Indiana, written on letter paper, and directed in the usual manner that letters are, was offered in evidence.    This letter stated that in consequence of an apprehended failure in business, the conveyance to their mother and sister had been made ; and sentiments were therein avowed which showed that the writer was utterly destitute of all integrity.    This letter was excluded by the court, and the exclusion was excepted to.

The defendants read their answer in evidence.

Mrs. Childs, an acquaintance of Mrs. Johnson, testified that about a

year before the Johnsons left St. Louis, she went with Mrs. Johnson to examine the house and lot in dispute, which was not long before the family went into possession of it. She never saw Mrs. Johnson with but small sums of money. She knew Mrs. Johnson was in search of a house for a residence, and she recommended the one in dispute to her.

W. F. Chase, a witness, testified thst he was consulted by the Johnsons in relation to the purchase of the house and lot, and that he was employed to examine the title. That J. M. Johnson said he was going to have the house bought, for his mother with what he owed her. This portion of the witnesses' testimony was objected to, but the objection was overruled and exceptions taken. The witness further testified that he did not draw up the contract; that he did not actually examine the title ; that he advised the Johnsons to make the purchase, but not in their own names, as it would be productive of litigation.

The bond of Shepard for a title to the lot, was dated 4th September, 1835.

Dr. Davy, who lived in the family, said that he did not know of Mrs. Johnson's having loaned money. Never saw any loaned. But when Johnson got into trouble, he went to her and his necessities were relieved. That he knew of Mrs. Johnson's going out, spending money, and getting articles of great value.

This is as much of the evidence in the cause as is deemed material to be stated, in order to a correct understanding of the case.

The court, at the instance of the complainant, gave the jury the following instructions :

1. That the answer of the defendants is evidence in this case, but liable to be rebutted by the testimony of one witness and circumstances; and the jury are to judge from the whole of the evidence, whether the allegations of the answer are outweighed or rebutted by the circumstances and other testimony in the case.

2. That the jury have the right to examine and compare the statements of the answer of the defendants, and if they find absurdities, contradictions, or inconsistencies, or concealments therein, they have the right to draw inferences unfavorable to the truth of said answer therefrom.

3. That if the jury believe from the evidence that J. H. & M. Y. Johnson conveyed the lot in question to their mother, Hannah Johnson, with remainder to their sister, without a valuable consideration, and that they were then in embarrassed circumstances, and owed debts to a large amount, which they were unable to pay *then* or *since*, then such

conveyance was fraudulent as to the creditors of said J. H. and M. Y. Johnson, although the said Hannah Johnson was ignorant of any fraud in the transaction.

4. That if the said deed from J. H. and M. Y. Johnson to Hannah Johnson were made by them for the purpose of delaying, hindering, or defrauding creditors, then it was void:—unless they also believe from the evidence that a valuable consideration was given by the grantee, Hannah Johnson, therefor, and that she then, or before, had no notice, or knowledge that said Johnsons, her sons, *were* attempting by that transaction to hinder, or delay, or defraud their creditors, or some of them.

5. That if said deed was made by the said J. H. and M. Y. Johnson, for the purpose of hindering, delaying or defrauding any one of their creditors, and is void therefor as to that creditor; it is also void as to all their creditors; 3 Bac. 312, 314. --

The complainant then asked the following instructions :

6. That the failure of the answer of defendants to state from *whom* or *where* the alleged private means of Mrs. Hannah Johnson were-derived to her, is a circumstance tending to impeach the character of her answer as testimony.

If the jury believe from the evidence that the conveyance mentioned in the issue, was made in a manner and for a consideration different from the statements of the answer, they are authorized to consider that as a circumstance impeaching the credibility of the answer.

Which were refused; to which refusal an exception was taken.

The defendants then asked the following instructions :

1. The jury are bound to believe the answer of Hannah Johnson, that she had separate means of her own, and that out of the same she furnished the means for purchasing the lot in question, and that she acquired said lot *bona fide*, to be true, unless she be proved to have sworn falsely, in her said answer, by two witnesses, or at least one witness, and other additional corroborating evidence, sufficient to satisfy the jury that she has sworn falsely. And her statements are entitled to the support of all the evidence in the case corroborative of her answer.

2. Unless the jury find from the evidence that said Hannah has sworn falsely, or that her said answer is outweighed by legal evidence, under the rule and direction stated in the first instruction, they ought to find that the lot in controversy was conveyed to said Hannah and Isabella *bona fide*, and for a valuable consideration.

3. As to the truth or falsity of the answers of James H., Madison Y. and Joseph Johnson, to the charges in the plaintiff's bill, the jury are

bound to be governed by the same rule, as contained in the first instruction.

4. A debtor in failing circumstances may lawfully prefer one creditor to another in full.

5. The words and acts of James H., Madison Y., and Joseph Johnson, or either of them, prejudicial to the rights of Hannah and Isabella to this lot, under the conveyance in evidence, cannot affect those rights unless they, Hannah and Isabella, at the time were knowing to and assenting to the same, or that they have since assented thereto.

6. Under the rule contained in the last instruction, what James H. Johnson said to Mr. Polk cannot affect the rights of Hannah and Isabella Johnson to the lot in question.

7. Fraud is a fact not to be presumed, but to be proved, and the jury should not find fraud unless proved. Fraud may be proved, however, as well by circumstantial as positive evidence.

Which were given; to the giving of which the complainant excepted.

A motion was made to set aside the order appointing a commissioner to take an account of the rents and profits, which was overruled, and a decree was entered dismissing the bill of complainant, Gamble, and against Johnson for the rents and profits; from which they appealed to this court.

The first point we will notice in this case, is that growing out of the supplemental matter stated in the bill of review, relative to the sale to and occupancy of the disputed premises of J. D. Johnston. The sale, it seems, was made to Johnston in October, 1839, and the suit was commenced by Gamble in June, 1840. The contract between Johnston and Gamble was not in evidence. If, by the contract, Gamble had divested himself of all interest in the subject of the suit, that fact should have been shown to the court in a proper way. If the proper parties are not made to a bill, the defect cannot be supplied by an answer making new parties. If the want of parties to a bill is apparent upon the face of it, the omission may be reached by demurrer; if it do not so appear, then the matter may be brought to the notice of the court by plea. Admit that the defendants might have been restored, by a bill of review, to all of which they were deprived by the original decree. No rents and profits were given to Gamble by that decree. Gamble took possession of the lot in dispute on the 10th July, 1838, immediately after the sheriff's sale, and continued in possession until he sold to Johnston, in October, 1839. The defendants had an older deed than Gamble; their remedy at law was clear; and they had no right to come into

equity to recover their rents and profits. The proper way to view this matter is to drop all consideration of the sale to J. D. Johnston by Gamble. Could the defendant have recovered the rents and profits from Gamble in this suit? The principle is not perceived on which it could been done. The rule that when a court of equity obtains jurisdiction of a cause for one purpose, it will retain it for all other purposes, and do complete justice between the parties, is not applicable to this case. The supplemental matter would not have been the subject of a cross-bill; Calverly vs. Williams, 1 Ves. Jun. 211; Story's Equity Pleadings, 317. If the rents and profits could not have been recovered from Gamble in this suit, on what principle can they be recovered from Johnston? Lord Redesdale, in his treatise, p. 90, says, that a supplemental bill may likewise be added to a bill of review, if any event has happened which requires it, and particularly if any person, not a party to the original suit, becomes interested in the subject, he must be made a party to the bill of review by way of supplement; Equity Draughtsman, 445; Story's Equity, 334. Here nothing has transpired since the original decree varying the condition of the cause. The sale to Johnston was made before the commencement of the original suit. It is no new matter. Even if Johnston could have been made a party in the way adopted, he standing in the shoes of Gamble, there could have been no decree against him for the profits. It seems that if a complainant assigns his interest in the suit *pendente lite,* if the defendant wishes to have the suit brought to a termination, his proper course is to apply to the court for an order that the assignee proceed and file a supplemental bill, in the nature of a bill of revivor, within such time as shall be prescribed by the court, or that the bill in the original suit be dismissed, of which application notice should be given; Sedgwick vs. Cleveland, 7 Paige, 287.

The testimony of Chase, that before the house and lot were purchased, he heard J. H. Johnson say that he was going to have the house bought for his mother with what he owed her, which was admitted by the court, is complained of as error. This declaration of Johnson was made before the contract with Shepard for the lot, which took place on the 4th Sept. 1835. The lot was not conveyed by the Johnsons to their mother until April, 1837. It is very clear that when a party's declarations afford any presumption against himself they may be used as evidence against him. But it is always for his adversary to say whether he will use them or not. When a party is in possession of land, *prima facia,* he is the owner in fee, and any declarations made by him against his interest, and repelling this presumption, shewing the nature of his

possession, and that it is not such as the law presumes, are regarded as *res gestæ,* and may be given in evidence against him and those claiming under him.   So when an act is being done, the declarations made at the time, shewing the nature of the act, the design and intention of the doer, are admitted in evidence as part of the *res gestæ.*   Such declarations made by one in possession, or in performing an act, are not regarded as hearsay, but as verbal facts illustrating the act which they accompany.         •

The declaration, it seems, was made to Chase before Johnson contracted for the lot with Shepard, and not being in possession at the time it can with no propriety be considered as forming a part of the *res gestæ.*   Such evidence was improperly admitted by the court, to show that the house and lot were purchased with money due to Mrs. Johnson. But it was admissible as evidence on the part of Mrs. Johnson to show that her son was indebted to her.   The rule, in such cases, is this :— that where evidence is proposed which is admissible for one purpose, or against one party, it is proper to receive if, with directions to the jury as to the purpose for which it is received, or against what party it is to have influence.

As to the letter written by M. Y. Johnson, it was evidence against him, and perhaps, owing to the structure of the issues, which are not calculated to simplify this controversy, was proper evidence in the cause, subject to the rule just above stated.   In the case of Hildreth vs. Sands, 2, J. C. R. 35, Chancellor Kent advanced the opinion that if a deed is fraudulent on the part of the grantor, it could not stand even if the grantee was innocent of the fraud. In the subsequent case, however, of Anderson & Roberts, 3 J. C. R. 378, he admits that that dictum was properly corrected when that cause was afterwards before the court of errors; 14 J. R. 498.   So it has been held that a conveyance, even if for a valuable consideration, is not, under the statute of fraudulent conveyances, valid in point of law from that circumstance alone.   It must also be *bona fide.*   Judge Story says, cases have been repeatedly decided, in which persons have given a full and fair price for goods, and where the possession has been actually changed, yet being done for the purpose of defrauding creditors, the transaction has been held fraudulent, and therefore set aside; 1 Equity, § 369.   The letter was written after the conveyance to Mrs. Johnson, and should not prejudice her rights.   A grantor, by declarations subsequent to his conveyance cannot affect the rights of his grantee ; 1 Mass. 165; 12 Mass. 429.   The jury applying the facts in the case to the contents of the letter, would determine whether it was written with an intent to communicate

information, or whether it was a mere romance ; and the circumstances that the relative was in existence, and did reside at the place to which the letter was addressed, would have their influence in this enquiry.

To the instructions which were given at the instance of the complainant, no exceptions were taken. But to the refusal of the court to give the two which were asked and refused, exceptions were filed. The first of these instructions turns upon the consideration of the defects, omissions and concealments of the answer. These matters were open to the commentary and observations of the court. The court might have made such remarks upon them, as in its discretion were thought proper for the guidance of the jury. If the court omit to do this, counsel are always at liberty to do it. The refusal of the court to do so, is not an error of law. Indeed it might be questioned how far a court would be warranted in giving that to the jury as a positive instruction, which can only be regarded as a comment on the evidence, intended to aid and assist the jury in their deliberations. Would not such an instruction usurp the province of the jury ? Van Ness vs. Packard, 2 P. 158. If the answer omits to deny a fact charged in the bill, that is no admission of the fact. The plaintiff may object to the answer for insufficiency in this respect, as he may for insufficiency as to any other fact charged. But if he takes no exception and the cause goes to a hearing upon the general replication, it is a waiver of the exception, and the plaintiff must prove his case. 5 Mason's Rep. 270. In asserting this principle, however, it is not intended to be maintained, that a neglect to except to an answer on account of its insufficiency, would exempt it from strictures for its evasiveness, concealments or other defects which weaken its force when given in evidence to the jury. The second of these instructions asserted an undoubted rule in ascertaining the weight of answers in chancery. When the answer is contradicted in any one or more important particulars, by adequate evidence, it is deprived in all other respects of that weight which is allowed to answers by the rules of a court of equity ; for being falsified in one thing, no confidence can be placed in it as to others. Roundtree vs. Gordon, 8 Mo. Rep., 2 Tuck. 503.

As to the instruction which were given at the instance of the defendants, their language is certainly open to criticism, and the law of them may be doubted. Richmond vs. Richmond, 10 Yerger, 343. There was no necessity for telling the jury they were bound to believe the answer of Hannah Johnson, unless it were proved that she swore falsely. If the answer had the weight attributed to it by the instructions, it might have been communicated to the jury in a way, so that

they would not be driven to the painful alternative of saying a lady swore falsely or the answer is true. This may seem a small matter, but we all know that such things have their weight. That an answer responsive to a bill can only be overturned by two witnesses, or one witness and corroborating circumstances, is a principle coeval with our chancery system. But this principle is subject to many just qualifications, as that the answer itself may contain circumstances giving greater credit to the testimony of a single witness; so when the answer is contradicted in a material matter by adequate evidence, it is deprived in all other respects of that weight which is allowed answers by the rules of a court of equity. Roundtree vs. Gordon, 8 Mo. Rep. This principle with its many qualifications is entrusted to the learning, skill and experience of chancellors, to be applied by them in adjusting the controversies of suitors. What is the object of an issue in chancery? A chancellor looking at the pleadings and evidence in a cause, is at a loss to ascertain the truth of a fact according to those rules of evidence which the law has prescribed for his government. Under such circumstances, he takes the opinion of the jury on the subject, who apply no other rule to ascertain the weight of the evidence than that experience which governs their conduct in life. If the jury in trying the issue, be fettered by the rule that the answer must be contradicted by two witnesses, or one witness and corroborating circumstances, their verdict is no evidence of the real state of the fact involved in the issue; it is a mere declaration of their own opinion, shewing how the matter stands under the rule of evidence in chancery, in relation a defendant's answer. So in fact a chancellor in directing an issue, would be delegating his judicial functions to a jury. It is clear that an issue may be directed, when there is only a single witness against the answer. De Tastel vs. Bordenave, 4 Con. Eng. Chan. Rep. 244; 2 Bacon 582. A chancellor in directing an issue may determine the effect of an answer in evidence; it is not evidence for the defendant unless he orders it to be so. The plaintiff may read it as an admission; then it is sa any other admission under oath. The order directing an issue may require one or both of the parties to be examined; it may direct a fact to be admitted. As the issue is intended for his own information, the chancellor may have it tried in a manner most satisfactory to himself. Barker v. Ray, 3 Eng. Con. Chan. 35. The character of the answer would influence a chancellor in directing an issue. If in his opinion, it is not entitled to the weight usually allowed answers, there is no hardship on the defendant in directing an issue. Chancellors usually look into causes, and see that there is a necessity for an issue

before it is directed. I would never direct an issue, when I was willing to say that the answer should have the weight of two witnesses, or of one witness and corroborating circumstances. When in the opinion of the chancellor, the answer is of a character that gives it that degree of weight, I should think it safer to apply the rule myself, than to leave it to inexperienced juries. How is a jury to ascertain what is, and what is not responsive to a bill? We find the judges themselves acknowledging the difficulty in laying down the rule on the subject distinctly and precisely, and running into *"niceties utterly unworthy a court of justice."* 2 Tuck. Com. 502. The weight to be given to an answer must depend on the nature of the answer itself. Although an answer may be responsive to a bill, yet if it be inconsistent with itself, if the matters thereof are incredible, can it be that two witnesses are necessary to its overthrow? Pierson v. Catlin, 3 Ver. 272. If different witnesses testify to various circumstances impeaching the credit of an answer, would not that be sufficient to overthrow it? These observations show the danger of applying any fixed rule to all answers, and the impropriety of allowing parties, as a matter of course, in every case to try the facts in a chancery cause by a jury, when the answer is to have the weight of two witnesses. The directing of issues, is a matter of discretion in the chancellors, to be done when a difficulty in ascertaining the truth of a fact in a cause arises. It must be confessed that the provision in the statute directing that the allegations put in issue shall be disposed of by a general or special verdict, before a final decree shall be made, creates some embarrassment in the consideration of this subject. But let it be remembered that that provision was the adjunct of the 1st sec. of the article in which it is found. It did not exist before the enactment of that section, which was repealed at the session succeeding that at which it was enacted. Its retention was perhaps an oversight, and to the same cause we may be indebted for it in the present code. Be that as it may, we do not conceive that the provision of itself, was designed to overturn the entire ancient practice in chancery in relation to the trial of issues. The speedy retracing of our steps, and falling back on the old practice after an abortive effort to change it in 1835, shows the difficulties with which the subject is surrounded, and how wise it is to keep within the ancient landmarks.

The objection to the instructions given at the instance of the defendants, that they assumed that the answer was responsive to the bill can not be enquired into by this court, as the amended original bill is not copied into the record. But it is obvious that an answer, unless it is responsive to a bill, is not evidence when it has been replied to. We

have seen that its contradictions may destroy its credit. So if a fact is asserted by a party, not of his own knowledge, although it may be responsive, it is not entitled to the weight of an assertion made on the personal knowledge of a party. 1 Dana. 474; 11 Wendall, 343; 9 Cr. 153.

Judge Tucker says there are cases in which the answer of a defendant is, in a court of equity, disarmed of all its force, or yields to the superior weight of even a single witness. Thus if the answer be evasive, it will not prevail where contradicted by one witness. Or if it be not positive and upon the knowledge of the defendant, the evidence of one positive and credible witness will overthrow it. 2 Tuck. Com. 502.

The fifth and sixth instructions, given at the instance of the defendants are also complained of. The object of these instructions, was to prevent the testimony of T. Polk, who drew the deed from the Johnsons to their mother, from affecting the rights of Mrs. Johnson. Polk's testimony related to what transpired at the time of the execution of the deed, to the declarations of the grantor made at that time. Such being the character of the testimony, it was beyond all question part of the *res gestæ*, and admissible; and it was competent to show the intent and inducements with which the deed was executed. Mrs. Johnson taking under that deed, must take it subject to the explanations to be furnished by the acts and declarations of the grantor at the time of its execution. Johnson's subsequent declarations could not affect his grantee. But his declarations made at the time of the execution of the deed, are a part of the *res gestæ*, and show the motives which influenced his conduct at the time. Bridge v. Eggleton, 14 Mass. Rep. 245. His conduct on the occasion tended to show that the deed was voluntary, and without any consideration, and if it were such, he being at the time insolvent, it was fraudulent, and void against his creditors. It is a matter of indifference whether the grantee were cognizant of the indebtedness or not, or whether she accepted it in good faith. If it were a fact that the deed was without a valuable consideration, or if it were merely for love and affection, the Johnsons being insolvent, it was fraudulent and void against creditors, however innocent and spotless the grantee might have been, for a man must be just, before he is generous. The declarations of Johnson made at the time of the execution of the conveyance, tended to show that it was a voluntary one, and those who take it under that conveyance, must take it subject to the infirmity attached to it by the conduct of the grantor.

The other judges concurring in reversing the decree, it will be reversed and the cause remanded.