SNYDER, *Plaintiff in Error*, v. FREE *et al.*

Division Two, February 28, 1893.

1. **Fraudulent Conveyance**: PETITION: ANSWER: ADMISSION. Where a petition to set aside a deed for fraud alleges that at the time of the death of the grantor and long prior thereto she was and had been indebted to plaintiff in a sum named, and that on a certain date she made the conveyance for the purpose of cheating and defrauding him out of the said debt owing him, and of putting the property beyond the reach of creditors, so that plaintiff could not subject it to the payment of the debt then owing him by her, an answer consisting of a general denial "except that which may be hereinafter expressly admitted" and which in a subsequent clause "admits the indebtedness" is an admission of the debt and its date as charged in the petition.

2. **Practice**: PLEADING: ANSWER. An answer should not be evasive but should fairly meet the allegations of the petition and present sharply defined issues to be passed upon by the triers of the facts.

3. ———: ———: ———. A plaintiff may move to have an answer made more definite and certain, though he is not bound to do so, it being the primary duty of the party drawing the pleading to express his meaning clearly and unmistakably.

4. **Voluntary Conveyance**: FRAUD: CREDITORS. A voluntary conveyance by a debtor in embarrassed circumstances, or by one whom the conveyance itself renders insolvent, is fraudulent and void as to creditors.

5. **Fraudulent Conveyance**: RECITALS OF CONSIDERATION. Recitals or statements of consideration in a deed, however specific, will not be sufficient to protect a purchaser, where there is any evidence of fraud.

6. **Voluntary Deed**: PRESUMPTION OF FRAUD: BURDEN OF PROOF. The burden is on the donee in a voluntary conveyance to show that the donor had sufficient means to meet his liabilities, otherwise the deed will be void as against creditors.

7. ———: LOVE AND AFFECTION: MOTIVE OF GRANTEE: KNOWLEDGE. A conveyance based on love and affection made by an insolvent, or one rendered insolvent by the conveyance, is voluntary and fraudulent as to existing creditors, regardless of the motive prompting the grantee, and notwitstanding she may have been ignorant of the insolvency and of the fraud.

8. ———: EVIDENCE: DECLARATIONS OF GRANTOR. Declarations of the grantor made to the notary at the time of the execution of the deed are admissible as part of the *res gestæ*, in an action to set the deed aside as being voluntary and in fraud of creditors.

9. ———: CONSIDERATION: SERVICE RENDERED ONE MEMBER OF THE FAMILY BY ANOTHER. The law implies no promise to pay for services rendered one member of a family by another; and services rendered or money expended on behalf of a mother by her daughter or the latter's husband, in the absence of a prior express or implied promise of payment, will not constitute a valuable consideration for the conveyance by the mother of all her property to the daughter, so that it cannot be impeached on the ground of being voluntary and in fraud of creditors.

10. ———: FRAUD: SUBSEQUENT CREDITORS: STATUTE. Under section 5170, Revised Statutes 1889, providing that "every conveyance * * * with the intent to hinder, delay or defraud creditors * * * shall be from henceforth deemed and taken as against said creditors * * * prior and subsequent, to be clearly and utterly void," a voluntary conveyance by one of all of her property, thereby rendering

herself insolvent, intending afterwards to contract debts, which she does contract, is fraudulent and void as to such subsequent creditor, although there was no existing indebtedness of the grantor at the time of making the conveyance.

11. ———: FRAUDULENT INTENT. To avoid a voluntary conveyance it is not necessary that an "actual intent" to defraud be shown. The statute is satisfied with "the intent to defraud" and whatever satisfies the mind and conscience of the existence of fraud is sufficient.

*Appeal from Clinton Circuit Court.*—HON. JAMES M. SANDUSKY, Judge.

REVERSED AND REMANDED.

IN this equitable proceeding the plaintiff seeks to set aside, on the ground of fraud on himself and other creditors, a deed executed by Mrs. Wing, the mother, to her daughter, the defendant, Mrs. Free, on the third day of November, 1884.

Mrs. Wing died intestate in March, 1885. Letters of administration were granted on her estate in June, 1886, at the instance of plaintiff as creditor, and his claim, amounting to the sum of $280, allowed in the probate court in September, 1886. The estate of Mrs. Wing was, and always had been, insolvent, and, as there were no assets belonging to said estate, plaintiff's claim remains unsatisfied.

In addition to the facts already stated, the petition alleges that at the time of the death of Mrs. Wing and long prior thereto, she was and had been indebted to plaintiff in the sum thus allowed for medical and surgical treatment, etc.; that on the third day of November, 1884, said Martha M. Wing, for the purpose of cheating and defrauding him out of the said debt and money owing him by said Martha M. Wing and also putting beyond the reach of creditors so that plaintiff could not subject the same to the said debt then owing him by said Martha M. Wing, did convey

by deed, etc., * * * said debt, which said David and Katie well knew at the time of said conveyance was owing by said Martha M. Wing to plaintiff; that Mrs. Free was and is the only surviving child of Mrs. Wing; that the consideration mentioned in the deed was $400, but that no part of such consideration had ever been paid; that the lot conveyed by the deed was the only property owned by Mrs. Wing, which was well known to defendants, etc.

The answer consists of a general denial of every allegation of the petition "except that which may be hereinafter expressly admitted." In a subsequent clause the defendants admit the death of Mrs. Wing as stated in the petition; "admit the indebtedness;" admit the appointment of an administrator and the allowance of the claim of plaintiff; that Mrs. Free was and is the only heir and surviving child of Mrs. Wing, and that she conveyed the property as alleged in the petition, but deny that the estate of Mrs. Wing was always insolvent; deny that the deed was made to hinder, delay or defraud plaintiff or others; but aver that it was voluntarily made in good faith and legal force and valid consideration, to-wit, the sum of $400 paid, etc., to Mrs. Wing by defendants, and for the additional consideration, to-wit, that said Martha M. Wing was greatly afflicted and feeble in health for several years prior to her death, and was very old, and required continual care, and kind treatment, and contin uous expenses were necessarily incurred in her behalf for several years prior to her death, all of which care, treatment and expenses were given, bestowed and expended to, upon and for said Martha M. Wing by said David Free and Kate S. Free, the defendants. That in the consideration of the said sum of money, and said care and treatment so paid and bestowed by defendants, and the love and affection that existed

between mother and daughter, said Martha M. Wing did convey said land and real estate to said Katie S. Free and for no other purpose, reason or consideration.

It is unnecessary to notice the residue of the answer, as it relates to an incumbrance held by Henry Free, the other defendant, on the property in controversy, for the sum of $200, and it was admitted at the hearing of the cause that plaintiff had no ground for relief against him. The reply was a general denial.

When the cause came on to be heard, the plaintiff moved for a decree on the pleadings, but this motion was denied.

The litigated property was variously estimated as worth at the time the deed was made from $500 to $900; it was the place of residence of Mrs. Wing, and her daughter and son-in-law had lived with her for about two years prior to her death. She was feeble and almost helpless.

The testimony of the notary who drew the deed of conveyance on the third day of November, 1884, shows that on that day Mrs. Free came to his office and told him that her mother was sick and wished to deed her some property and to come to the house, which he did; that Mrs. Wing was sick and confined to her bed, and her daughter was there present when he arrived, but whether after that he does not know. He further testifies: "I drew up the deed in controversy. Mrs. Wing executed it. No consideration was paid for the deed in my presence. The way I came to write in the consideration mentioned in the deed was this: I asked Mrs. Wing what consideration I should insert in the deed. She replied that I should insert the same consideration that she paid me when she bought the property, and she said Katie had always been good to her and she wanted her to have the property. I wrote the

same consideration in the deed as in the deed to her from me. I think the consideration was $400. There was nothing more said or done about the consideration.''

On the same day this deed was executed, plaintiff had amputated Mrs. Wing's breast; but whether before or after the execution of the deed does not appear. In the preceeding July, however, he had announced her case as hopeless. ''During the time I was treating Mrs. Wing, the defendant, Katie S., often came to me and asked me to do all I could for her mother and that her mother would leave enough property when she was gone to pay me. I recall one occasion when she said this to me; it was in January, 1885, on a cold, blustery day. I was not feeling well that day. Katie S. Free came to my office and wanted me to go and see her mother. I told her I could not do her mother any good except to relieve her pain and that I would rather not go, that there would be no use in running up a big doctor bill. She replied that she wanted me to do all I could for her mother and make her comfortable and that when her mother was gone there would be plenty left to pay me. * * * During sickness of Mrs. Wing she often talked about her doctor bill. Said she was ashamed that she had not paid me anything, but that when she would be gone there would be plenty left to pay me. I told her not to worry about her doctor bill.''

It was abundantly shown by the evidence that the estate of Mrs. Wing was absolutely insolvent and always had been. The title of Mrs. Wing to the property in litigation was of record; but it does not appear when the deed in question was put to record, or that plaintiff had any notice of its existence.

At the close of the evidence, the court found and declared for the defendants, and plaintiff brings error.

*John J. McAnaw* for plaintiff in error.

(1) The burden of proof is by pleading on defendant, and plaintiff's motion should be sustained. Taylor on Evidence, text book series, sec. 150, p. 170; side sec. A, 128; Wharton on Evidence, secs. 366, 367; *Clements v. Moore*, 6 Wall. 229; Pomeroy on Equity Jurisprudence, sec. 956; Taylor on Evidence, par. 2, ch. 2, sec. 376, star sec. 347; *Leavitt v. LaForce*, 71 Mo. 353; *Leeper v. Bates*, 85 Mo. 224. (2) Plaintiff's declarations of law should have been given. Cases, *supra; Lionberger v. Baker*, 88 Mo. 447; *Eck v. Hatcher*, 58 Mo. 239; *Henderson v. Henderson*, 55 Mo. 534; *Mabary v. McClurg*, 74 Mo. 575; *Cass Co. v. Greene*, 66 Mo. 498; *Bent v. Lewis*, 88 Mo. 462; *Hunter v. Atkins*, 3 Mylne & Keene, 135; *Garvin v. Williams*, 44 Mo. 465; *Cadwallader v. West*, 48 Mo. 483; *Street v. Goss*, 62 Mo. 226; *McClure v. Lewis*, 72 Mo. 314; *Caspari v. Church*, 82 Mo. 652; *Gay v. Gillilan*, 92 Mo. 251; May on Fraudulent Conveyances, star p. 56, in Blackstone series, p. 57. As to the kindness of Katie being a consideration for the deed, plaintiff refers to *Penter v. Roberts*, 51 Mo. App. 222.

*William Henry* for defendant in error.

(1) Strong evidence of a fraudulent intent is required when there are no existing creditors and a deed is attacked for fraud by a subsequent creditor. *Ziekel v. Douglass*, 88 Mo. 382; *Bank v. Overall*, 90 Mo. 410; *Loehr v. Murphy*, 45 Mo. App. 519. (2) The evidence in this case is very weak from its nature, since it consists of mere verbal declarations; and all such testimony must be received with great caution. 1 Greenleaf on Evidence, sec. 200. (3) All presumptions are in favor of the judgment, and this court will

defer somewhat to the findings of fact by the trial court. *Ryan v. Gilliam*, 75 Mo. 132.

SHERWOOD, J.—I. The motion for a decree on the pleadings should have prevailed; Mrs. Free and her husband in their answer "admit the indebtedness." Now, the only indebtedness charged in the petition is that which is alleged therein to have been due on the third day of November, 1884; for the petition in reference to the deed made on that date, and to the indebtedness of Mrs. Wing states, "said debt and money owing him by said Martha M. Wing;" * * * "said debt then owing him by," etc. The admission of the debt and likewise of its date must, therefore, be regarded as standing confessed on the face of the pleadings notwithstanding the ambiguous phraseology in the prefatory portion of the answer.

The central idea of code pleading is that an answer should not be evasive, but should meet the allegations of the petition fairly and squarely, thus presenting sharply defined issues for the triers of the facts to pass upon. Revised Statutes, 1889, sec. 2049. On a former occasion this court denounced the method here employed as a "vicious method of pleading," and this was an apt characterization of such a faulty way of pleading. It was never the design of the code that a party plaintiff should have to carefully sift each denial of the answer and to carefully compare it with each paragraph of the petition in order to see what is admitted and what is denied. Such denials may be general or they may be special, but in either event the issue must be sharply defined, and not left to surmise or conjecture. And notwithstanding a party plaintiff may move to have the pleading of his adversary made more definite and certain, yet he is not bound to do this; that is the primary duty of the party drawing

the pleading, and the latter cannot cast that *onus* on his opponent by failing to perform his own duty in the first instance, and that duty consists in expressing his meaning clearly and unmistakably. The same view is taken on this point in New York, from whence our code is derived. *Clark v. Dillon*, 97 N. Y. 370.

II. Taking the answer then as admitting the date of the indebtedness, and considering this admission in connection with other facts heretofore stated, the common case is presented of a debtor in embarrased circumstances, or one whom the conveyance itself renders insolvent, making a voluntary conveyance to her daughter of the last particle of property she had in the world, thus reducing herself to a state of absolute penury. Of course in such circumstances such voluntary conveyance cannot withstand for a moment the force of the statute leveled against such transactions when the rights of a creditor intervene.

This conveyance has been spoken of as voluntary. This fact clearly appears from the testimony of the notary who took the acknowledgment of the deed and by other evidence, and is contradicted by none. Recitals or statements of consideration in a deed however specific will not be sufficient to protect a purchaser where there is any evidence of fraud; in such instance the purchaser must establish his case by facts, not by evidence of his own making. 2 Bigelow on Fraud, pp. 443 and 533 and note citing *Houston v. Blackman*, 66 Ala. 559; *Kimball v. Fenner*, 12 N. H. 248; *Feltz v. Walker*, 49 Conn. 93; *Cruger v. Tucker*, 69 Ga. 557, and other cases. See also Bigelow on Estoppel [5 Ed.] 477, and note; Bump on Fraudulent Conveyances [3 Ed.] 594, *et seq.*

A still stronger view is held in England in reference to the recitals in deeds when brought in question as fraudulent within Statute, 13 Elizabeth. On this

point Taylor says: "Although the courts are in general bound to presume *prima facie* in favor of deeds which appear to have been duly executed, an exception to this rule is recognized where sales are sought to be set aside by the creditors of the vendor as fraudulent within the statute. 13 Elizabeth, chapter 5. * * * Whenever, therefore, any transaction is sought to be invalidated by this act, it becomes necessary for the vendor to establish the justice of his title and to show affirmatively, not only that the deed under which he claims was duly executed, but that it was made in perfect good faith, and also for a valuable, as contradistinguished from a mere good, consideration." Taylor on Evidence, Blackstone Series, sec. 150, p. 170. When a deed is shown to be voluntary as to existing creditors, that is, when it is not founded on a valuable consideration, then "the burden of proof rests upon the donee to establish the circumstances which will repel the presumption of a fraudulent intent. The conveyance stands condemned as fraudulent unless the facts which may give it validity are proved by him. If no evidence is given to show that the donor had ample means to meet his liabilities, then the transfer must be deemed void as against creditors." Bump on Fraudulent Conveyances [3 Ed.] pp. 276, 277.

The author just quoted elsewhere observes: "To rebut the presumption of fraud the proof must be clear, full and satisfactory. If there is a reasonable doubt of the adequacy of the grantor's means, then the voluntary conveyance must fall, for the effect of it is to delay and hinder his creditors. It is incumbent on the donee to show a case not only without taint, but free from suspicion. The condition of the donor must be shown to be such that a prudent man with an honest purpose and a due regard to the rights of

his creditors could have made the gift." Bump on Fraudulent Conveyances [3 Ed.] p. 285. "If the donor at the time is indebted to the extent of insolvency, the conveyance is void. A gift by a person unable to pay his debts so directly and inevitably tends to delay and hinder creditors and so plainly violates the moral duty of honesty that the least regard to fair dealing and integrity renders it necessary to pronounce it void. Such a transaction is not be looked on only as a means by which the intent to defraud may be inferred. The act is altogether incompatible and irreconcilable with a contrary intent. It is an act of fraud in itself. If the donor is insolvent, the only question is whether or not a conveyance is voluntary, and if it is voluntary it is void as against creditors." Bump on Fraudulent Conveyances [3 Ed.] pp. 280, 281.

And the same rule which prevails as to a gift made by an insolvent debtor equally prevails where a gift is made which reduces the grantor to a state of insolvency. A transfer of all the donor's property is for this reason fraudulent, and a universal donee is bound to pursue one of two courses—either to pay the existing debt of the donor, or abandon that which has been given him. Bump on Fraudulent Conveyances [3 Ed.] p. 282.

Here the answer admits the existence of the debt at the time of the execution of the conveyance, and the testimony of the notary shows that no consideration was paid for the property, none intended to be paid, and that $400 was inserted as a mere matter of form. And the evidence further shows that the property conveyed was all that Mrs. Wing then owned, at least there was no evidence to the contrary; and besides, although Mrs. Wing was a woman in humble circumstances in life, even if the $400 recited in the deed had

in fact been paid, there was no trace of this, to her, large sum to be found among her assets. It cannot therefore be said that the donee has borne the burden which the law had cast upon her to establish circumstances which repelled the presumption of a fraudulent intent. Doubtless the real consideration, as shown by Mrs. Wing's contemporaneous declaration to the notary, was that "Katie had always been good to her, and she wanted her to have the property." But a conveyance based on love and affection, when made by an insolvent or by one made insolvent by the very act of conveying the property, cannot be regarded other than voluntary and consequently fraudulent and void as to existing creditors, no matter what may have been the motive prompting the grantee, although she may have been ignorant of the insolvency and ignorant of the fraud. *Gamble v. Johnson,* 9 Mo. 597.

And the declarations made by Mrs. Wing to the notary were evidence because part of the *res gestæ,* and were evidence to show the intent of the grantor, in executing the deed, as against her and all persons claiming under her; and those thus claiming the property must take it subject to the infirmity attached to it by the conduct of the grantor. *Ibid.*

III. What has been said about a consideration of "love and affection," failing to fill the measure of valuable consideration in contemplation of law, is equally true respecting services rendered or money expended on behalf of her mother by Mrs. Free or her husband, unless there had been a contract to that effect entered into between the parties prior to money expended or services rendered. As to members of the same family, the law implies no promise to pay for services rendered each other; and this rule finds its basis in the simple reason that such services are not rendered in expectation of pecuniary compensation. *Morris v. Barnes,*

*Adm'r*, 35 Mo. 412. For this reason such services do not constitute a consideration deemed valuable in law nor furnish the foundation for a transfer which cannot be impeached on the ground of being voluntary. Bump on Fraudulent Conveyances, 232.

But this, the ordinary presumption as to such services, may be overcome by proof of an express or an implied contract which looks to compensation as a reward for services rendered. Schouler on Domestic Relations [4 Ed.] sec. 269.

In the present case, however, no such contract is alleged in the answer, nor is it therein stated *how much money* was expended, nor that it was expended at the instance and request of Mrs. Wing. And, if the money had been expended without any promise express or implied of repayment, the fact of such expenditure being a *past* consideration would not alter the character of a deed which otherwise should be regarded as merely voluntary. But aside from what the answer sets up or attempts to set up in its concluding paragraph, there was no evidence offered in its support.

It is said that this case was determined by the court below on the authority of *Dougherty v. Harsel*, 91 Mo. 161; if so this was a misconception of the facts in that case as well as in this one.

IV. But casting aside for the moment the admissions of the answer, and considering the case as a contention between the donee under a voluntary conveyance and subsequent creditor, is the condition of the defendants bettered by considering the matter from this point of view? In a former paragraph of this opinion, citation was made of authority to the effect that a voluntary conveyance made by a donor, indebted at the time to the extent of insolvency, is void as to existing creditors, and that the result is the same where the donor, though

solvent, renders himself insolvent by the gift he makes. Bump on Fraudulent Conveyances, 280, 282.

In the present instance we have a case of the latter kind, and the question is whether a subsequent creditor can attack a voluntary conveyance thus made, even though there be no existing indebtedness at the time of making such conveyance. The language of our statute respecting fraudulent conveyances is that, "Every conveyance * * * with the intent to hinder, delay or defraud creditors * * * shall be from henceforth deemed and taken as against said creditors * * * prior and subsequent, to be clearly and utterly void." Revised Statutes, 1889, sec. 5170. It will be observed that the statute makes no distinction between the two classes of creditors, and that it is unlike 13 Elizabeth, chapter 5, in that it specifically mentions subsequent creditors, something which the English statute does not do.

Under our statute, subsequent creditors are as much within its protection as prior creditors. In discussing this point, PETERS, J., in *Laughton v. Harden*, 68 Me. 208, observes: "It is said sometimes that a voluntary conveyance may be good against subsequent and not good against existing creditors. Why? Merely because the conveyance may operate, or be intended to defraud the one kind of creditors and not the other. It is void only according as it is fraudulent. If it is fraudulent as against a particular creditor, then as against that creditor it is void. * * * There is no distinction between a conveyance that is fraudulent in law and one that is fraudulent in fact so far as their operation in civil suits is concerned. No doubt, a voluntary conveyance is more likely to be fraudulent as against prior creditors but not always so. * * * A conveyance, whether fraudulent in law or in fact, is after all no more nor less than a fraudulent conveyance. The only

difference is in the mode and extent of proof required to substantiate the one or the other.    Certain facts may be sufficient to prove the one and not the other.''

In that case a subsequent creditor successfully attacked for fraud a voluntary conveyance made by a father to his son, and it does not appear that there were any prior debts or prior creditors.

In *Case v. Phelps*, 39 N. Y. 164, there was no fraudulent intent as to *existing* creditors, but the conveyance was a voluntary one to the wife, and was not put to record, but the grantor did this in order to engage in a new business and to secure the property for the benefit of himself and family in the event of losses therein, and thereupon WOODRUFF, J., said: ''That a conveyance made for the purpose of hindering, delaying and defrauding future creditors is within the statute and void, cannot be questioned.    Such a conveyance though the grantor be wholly free from debt at the time is within the terms and intent of the statute. * * * In other words, may a person about to engage in business which he believes may involve losses, with a view to entering upon such a business, convey his property to his wife voluntarily without consideration to secure it for the benefit of himself and family in the event that such losses should occur? * * * It seems to me that the question above put can receive but one answer.    The facts found constitute fraud, fraud in fact, in whatever terms it is expressed.''    And upon this view the ruling of the court was accordingly made adversely to the conveyance attacked by the subsequent creditors.

An author already quoted says:    ''If the donor is insolvent at the time of the transfer, the conveyance is generally deemed to be void as to subsequent creditors.'' Bump on Fraudulent Conveyances, 322, and cases cited.

As already seen the same result flows from a gift which reduces the donor to insolvency. The same author elsewhere says: "The conveyance must be made with an intent to put the property out of the reach of debts which the grantor at the time of the conveyance intends to contract, and which he does not intend to pay, or has reasonable grounds to believe that he may not be able to pay. There need not be any intent to contract any particular debt or debts. It is sufficient if there is an intent to contract debts, and a design to avoid the payment of such debts by the conveyance. * * * Persons to whom a debt accrues have a right to expect that their debtor will deal fairly and in good faith with them, and if on the eve of an indebtedness about to be incurred and with a view thereto, and without the knowledge of the party extending the credit, the debtor makes a voluntary conveyance of property upon which he knows that his contemplated creditor relies or has a right to rely, this is an actual fraud upon such subsequent creditor. Such an act will not be relieved of its fraudulent character by the mere fact that the conveyance is placed upon record, if the creditor has no actual notice, and the conveyance without his negligence operates as a surprise upon him." Bump on Fraudulent Conveyances, pp. 318, 319.

In the case at bar the evidence shows as before stated that Mrs. Wing conveyed all the property she possessed to her daughter Mrs. Free, thus rendering herself destitute. She must be presumed to know this was all the property she had, and that her only child and sole heir at law would soon inherit the property without the formality of a conveyance. She knew also that she had no reasonable grounds to believe that she would be able to pay the debt she was thus contracting to plaintiff, and yet she made the voluntary conveyance, and plaintiff being in ignorance of it, she gave him

repeated assurance from time to time that when she was gone there would be plenty left to pay him. On this state of facts it is difficult to doubt the existence of an intent to defraud plaintiff; for this was the inevitable consequence of the act. "If the necessary consequence of a conceded transaction was defrauding another, then, as a party must be presumed to have foreseen and intended the necessary consequences of his own act, the transaction itself is conclusive evidence of a fraudulent intent; for a party cannot be permitted to say that he did not intend the necessary consequence of his own voluntary act. Intent or intention is an emotion or operation of the mind, and can usually be shown only by acts or declarations, and as acts speak louder than words, if a party does an act which must defraud another, his declaring that he did not by the act intend to defraud is weighed down by the evidence of his own act." *Babcock v. Eckler*, 24 N. Y. 623.

Sometimes it has been loosely said, that in order for a subsequent purchaser to successfully attack a voluntary conveyance on the ground of fraud, it is necessary that he show an "*actual intent*" to defraud; but this phrase is inaccurate and misleading; the statute uses no such expression; it is satisfied with "the intent to defraud" and courts ought to require no more. In the highest grade of crime, proof of an "actual intent" is not required, and, if required, convictions would rarely occur. So it would be in regard to instances like the present. It would be indeed a vain and hopeless task to set aside a voluntary conveyance if a subsequent purchaser had to prove an "*actual intent*" to defraud. But, if such an intent were required, this case would furnish as strong proof of it as it is ordinarily possible to obtain. But, such a high degree of proof is not necessary. Fraud under the statute is nowise different from that found elsewhere. Whatever satis-

fies the mind and conscience of the existence of fraud is sufficient. Cooley on Torts, 476; *Massey v. Young*, 73 Mo. 260.

And where there has been an excessive voluntary conveyance (especially where, as here, such conveyance beggars the grantor), BIGELOW, C. J., remarks: "Nor would this presumption of fraud be confined in its effects to preexisting creditors. It would be equally strong as to those whose debts were subsequently contracted, because a transfer of property under such circumstances affords a reasonable ground of presumption that the intent with which it was made was to put beyond the reach of creditors, future as well as present, the fund or capital to which they had a right to resort for the payment of their debts." *Winchester v. Charter*, 12 Allen, 609.

A similar view of the law is taken in New Jersey. *Claflin v. Mess*, 30 N. J. Eq. 211; in which, after declaring that "fraud in fact" must be shown by future creditors, it is explained that such "may be considered found when it appears that, after deducting the property which is the subject of the gift, the grantor has not retained sufficient available assets for the payment of his debts." This view appears to be that entertained by the learned author of a recent work on the subject now in hand. 2 Bigelow on Fraud, 105, *et seq*.

The premises considered, the decree will be reversed and the cause remanded with directions to the lower court to enter a decree for the plaintiff. All concur.