CHARLES WEBSTER, Appellant, v. L. M. HARDY, Respondent.

**St. Louis Court of Appeals, February 3, 1914.**

1. **FRAUDULENT CONVEYANCES: Rights of Subsequent Creditors.** Although a conveyance was fraudulent, in that title was conveyed to a third person for the purpose of shielding the property of the real purchaser from his creditors, such fraud would not be available to a subsequent creditor of such purchaser, as a predicate of recovery, unless the transfer was effected with the intent of the purchaser incurring subsequent debts and defeating them.

2. ————: **Rights of Creditors.** A creditor has no right to complain of and unravel a fraudulent conveyance unless his debtor participated in the fraud.

3. ————: ————. The manager of a telephone company purchased an independent line, which the telephone company used for toll messages, paying the manager a certain per cent thereon. After the line had been sold by the manager to plaintiff, it was seized under an attachment issued against the telephone company, for an obligation which accrued subsequent to the time it was purchased by the manager, and plaintiff thereupon brought an action of replevin. *Held*, that the attachment could not be sustained, since it did not appear that the telephone company had any interest in the line or that any fraud had been committed which would give the subsequent creditor the right to proceed against the line as though it were the property of the debtor telephone company.

Appeal from Clark Circuit Court.—*Hon. Charles D. Stewart*, Judge.

REVERSED AND REMANDED (*with directions*).

*W. J. Roberts* and *W. L. Berkheimer* for appellant.

Plaintiff Webster had no knowledge of any claim of William Balbach, the plaintiff in the attachment suit wherein the property was attached, nor had any knowledge of any of the transactions between Peebles

and Hubinger, and even admit for the sake of argument (which we do not do) that the sale of the telephone by Hubinger to Peebles and the sale of the line by Peebles to the plaintiff, Webster, was fraudulent, so far as Hubinger and Peebles were concerned, plaintiff Webster is not affected thereby, for the reason the evidence shows he paid a valuable consideration for the same which is not contradicted, without notice of such fraud, and he was and is an innocent purchaser for value, and in order to defeat his title as such purchaser, the evidence must show that he purchased the same with notice of the fraud and must participate in such fraudulent intent. Ames v. Gilmore, 59 Mo. 537; Daugherty v. Cooper, 77 Mo. 528; Forrester v. Moore, 77 Mo. 651; Ryan v. Young, 79 Mo. 30; Farmers' Bank v. Worthington, 145 Mo. 91; John Deere Plow Co. v. Sullivan, 158 Mo. 440.

*Hughes & McCoid, O. S. Callahan,* and *Theodore L. Montgomery* for respondent.

NORTONI, J.—This is a suit in replevin. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

The property in controversy consists of a telephone line, the wire, poles, cross-arms, etc., extending from the Des Moines river bridge to the city of Kahoka, in Clark county. The defendant is sheriff of Clark county and was in possession of the telephone line at the time the suit was instituted under a writ of attachment in his hands issued out of the circuit court of that county, in the suit of Balbach v. Mississippi Valley Telephone Company, a corporation. Defendant sheriff, having levied the writ of attachment upon and taken possession of the telephone line, plaintiff Webster instituted this suit against him in replevin to recover the same, alleging that he, and not the Mississippi Valley Telephone Company, defendant in the

attachment suit, was the owner of it. It appears that the Mississippi Valley Telephone Company is an Iowa corporation with its principal office at the city of Keokuk. This company owned and operated several telephone lines in that vicinity and to St. Paul, Minnesota. The plaintiff in the attachment suit, William Balbach, entered the employ of the Mississippi Valley Telephone Company about July 1, 1909, and remained therein until April 1, 1910.

The indebtedness for which Balbach instituted his attachment suit in the Clark County Circuit Court accrued against that company for labor performed in soliciting patrons and collecting for it. During all of the time Balbach worked for the Mississippi Valley Telephone Company, it operated, among others, the telephone line involved here—that is, this short line running from the Des Moines river bridge to Kahoka, in Clark county. All of this line, as we understand it, is in this State. It is to be inferred from the record, though the evidence is meager concerning it, that the property of the Mississippi Valley Telephone Company was encumbered by a mortgage in favor of bond holders and that such mortgage was foreclosed on November 27, 1910. Charles Webtser, plaintiff here, purchased the property of the Mississippi Valley Telephone Company at the mortgage sale, but it is conceded throughout the case that the telephone line from the Des Moines river bridge to Kahoka—that is, the line involved in the replevin—was not included within that mortgage, and that it did not pass by that sale to Webster. However, the evidence is, and no one denies it, that the short line involved in this suit— that is, the line from the Des Moines river bridge to Kahoka, Missouri—was owned by one Thomas Peebles at that time, and that Peebles was the secretary and general manager of the Mississippi Valley Telephone Company.

On the same day that plaintiff Webster purchased the property of the Mississippi Valley Telephone Company under the mortgage sale in Iowa, Peebles, the secretary and manager of that company, sold him at private sale the telephone line here involved, running from the Des Moines river bridge to Kahoka, Missouri. That was on November 27, 1910. It is not only undisputed, but seems to be conceded, that Webster, plaintiff here, took possession of all of the property of the Mississippi Valley Telephone Company purchased by him at the mortgage sale, and it is in evidence that he took possession, too, of this line in Missouri, which he acquired from Peebles, for his agent, Wood, went over it, examined it, caused some repairs to be made upon it, etc., etc.

There is no evidence whatever in the record that the Mississippi Valley Telephone Company, the Iowa corporation, for which the plaintiff in attachment, William Balbach, had performed services, and which was his debtor therefor, ever at any time owned the telephone line in Missouri, running from the Des Moines river bridge to Kahoka—that is, the line involved in this suit in replevin—unless the ownership of Peebles, secretary and manager of that company, inured in some way to the benefit of the telephone company, so as to enable the company's creditor, Balbach, to seize and appropriate it in compensation of his debt against the corporation. It is undisputed and, indeed, conceded, for both sides gave it in evidence, that one Hubinger originally constructed the telephone line involved in this suit, from the Des Moines river bridge to the city of Kahoka, and owned it in October, 1905, or three and one-half years before Balbach entered the employ of the Mississippi Valley Telephone Company. On October 26, 1905, Hubinger sold the line to Thomas Peebles and executed a bill of sale therefor. It appears that several suits were pending between Hubinger, Peebles and others, and upon a compromise of

that litigation, Hubinger transferred the telephone line to Peebles, and Peebles thereafter operated it, so he says, in connection with the Mississippi Valley Telephone Company, of which he was secretary and manager. According to the evidence of Peebles, and though it may not be admitted to be true, it is not disputed in the record, the Mississippi Valley Telephone Company, of which he was manager, sent toll messages over this particular telephone line, and he received seventy-five per cent of the tolls while the company took twenty-five per cent. Peebles at that time—that is, in October, 1905, when he acquired this telephone line from Hubinger—was secretary and manager of the Mississippi Valley Telephone Company, and it appears that this line was thereafter operated in conjunction therewith, without any ostensible insignia of separate ownership.

The evidence for defendant tends to prove that the Mississippi Valley Telephone Company operated the particular telephone line involved here between the Des Moines river bridge and Kahoka, Missouri, in connection with its other lines—that is, all were under the same management of Mr. Peebles and others who were connected with the Iowa corporation, as if all belonged to that company. It is said that any repairing which was done on the telephone line between the Des Moines river bridge and Kahoka was done by the employees of the Mississippi Valley Telephone Company. Materials for repairs were furnished by that company, and, indeed, William Balbach, plaintiff in the attachment suit, himself solicited some patrons for telephones and made some collections for that company on this identical telephone line. The receipts in the offices were reported to the Mississippi Valley Telephone Company's office at Keokuk, Iowa, and to the world at large it appeared as though the Mississippi Valley Telephone Company was operating this line in Missouri, and it may be that it appeared to be operat-

ing it as the owner. But though such be true, the evidence is, and no one contradicts it, that Mr. Peebles, manager of the Mississippi Valley Telephone Company, personally owned this short line and operated it individually in connection with the lines of which he was manager, and it is said by him that, for such materials and repairs as were put upon the line, payment was made by him through deposits in the bank at Keokuk to the credit of the Mississippi Valley Telephone· Company, of which he was secretary and manager.

But after all, the case concedes that Hubinger owned this telephone line in 1905, having constructed it several years before and operated it for a time, and that he sold it to Thomas Peebles in October of that year. There is not a syllable of evidence in the record to the effect that Peebles purchased this line for the Mississippi Valley Telephone Company, of which he was secretary and manager, or that that company ever owned it at any time unless it be that the purchase by Peebles from Hubinger and the subsequent employment of the line in connection with the lines of the company caused the title to inure to the Mississippi Valley Telephone Company, so as to render it available as assets of the Mississippi Valley Telephone Company, which might be seized upon by its creditor, William Balbach, under the attachment by which the defendant sheriff now holds it.

This seems to be the theory on which the judgment for defendant sheriff in the replevin suit is sought to be sustained here, but we are persuaded that it is without avail on the facts in the record. Indeed, the theory advanced is beside the case, for nothing appears suggesting fraud in fact or fraud in law on the part of the debtor telephone company or its manager, Peebles, and especially is this true when considered with respect to the rights of William Balbach, the subsequent creditor of 1909-1910. There is no suggestion in the case that the Mississippi Valley Tele-

phone Company was insolvent in October, 1905, when its manager, Peebles, purchased this line from Hubinger and took the conveyance to himself nor that that company owed any debt to any person whatever. There is no suggestion or facts affording a reasonable inference that Peebles purchased this line with the money of the telephone company, of which he was secretary and manager, or that he purchased it for that company. William Balbach, plaintiff in attachment, was not a creditor of the Mississippi Valley Telephone Company at that time, nor was he a creditor of Peebles. Indeed, there is some argument in the brief, and defendant's instructions seem to proceed in part, as though Balbach had some claim against Peebles; but this is an erroneous view.

The case, on an examination of the record, concedes that Balbach had no claim against Peebles at any time. He was never in his employ, and, in fact, asserts no claim against him. Balbach entered the employ, according to his own statement, of the Mississippi Valley Telephone Company, a corporation, of which Peebles was secretary and manager, about July 1, 1909, and continued in the employ of that company until about April 1, 1910. On the account accrued for this service, he instituted a suit in the district court of Lee county, Iowa, against the Mississippi Valley Telephone Company, and recovered a judgment therein for $466. The property of that company having passed in the meantime, by means of a foreclosure sale, November 27, 1910, to Webtser, it is to be inferred that Balbach found no property in the State of Iowa owned by the defendant in his judgment, out of which to satisfy the debt. Therefore, he brought the judgment into Missouri and instituted a new suit thereon in the circuit court of Clark county, against the Mississippi Valley Telephone Company, the Iowa corporation, and sued out the writ of attachment in aid of it, under which the defendant sheriff levied upon,

and took possession of, the telephone line formerly owned by Hubinger, running from the Des Moines river bridge to Kahoka, Missouri, as if such line were owned by that company. Balbach asserts no claim against Peebles and never did, and it is obvious he had no claim whatever against the Mississippi Valley Telephone Company in October, 1905, when Peebles purchased the telephone line involved here from Hubinger. His claim against the Mississippi Valley Telephone Company accrued three and one-half years after the transaction by which Hubinger conveyed this telephone line to Peebles, and it is obvious that Balbach is a subsequent creditor of the telephone company, when considered with reference to that transaction.

As before said, there is no suggestion of fraud with respect to that transaction, as between the Mississippi Valley Telephone Company and its manager, Peebles, who purchased the line from Hubinger, as if he took the title in his own name for the mere purpose of shielding the property as assets of the company from creditors. Indeed, even though there were evidence in the record tending to prove fraud of that character, it would not be available as a predicate of recovery here in favor of a subsequent creditor, coming in three and one-half years thereafter, unless it appeared, too, that such transfer by Hubinger to Peebles was executed through an arrangement on the part of the debtor, Mississippi Valley Telephone Company, with a view and intent of its incurring subsequent debts and defeating them. [Kinealy v. Macklin, 89 Mo. 433, 14 S. W. 507; Snyder v. Free, 114 Mo. 360, 21 S. W. 847; Krueger v. Vorhauer, 164 Mo. 156, 63 S. W. 1098.] It is unnecessary to consider the rights of a prior creditor here, for no such case appears in the proof, in that the transaction is assailed by one coming in three and one-half years after it took place. However, even in the case of a prior creditor, unless

the debtor telephone company participated in the fraud, such creditor could not complain and unravel the fraud on it.  [See Parker v. Roberts, 116 Mo. 657, 22 S. W. 914.]   According to the undisputed evidence, and, indeed, the conceded fact, Hubinger owned this telephone line in 1905, and the evidence is, that he sold it to Peebles.  No one suggests, as before said, that Peebles purchased it with an arrangement with the company of which he was manager, for its use, with its means, or with a view of defrauding the creditors, either prior or subsequent of the Mississippi Valley Telephone Company, or that that company was then insolvent or owed any debts, and, therefore, the transaction stands as one between man and man, free from all imputation of iniquity or bad faith.  There can be no doubt cast upon the title of Peebles, and he had a right to convey it to plaintiff Webster as he did on November 27, 1905.  No one suggests that Webster even knew that Balbach had a claim against the Mississippi Valley Telephone Company, and, indeed, there is no imputation of fraud against him personally whatever, save that it is said his title to the property is contaminated and defeated through the fraud of his grantor, Peebles, and Balbach's debtor, the telephone company, which occurred in October, 1905.  There is no evidence of such fraud, and it is obvious that if there were, it would not be available to the subsequent creditor, Balbach, except it appeared such fraud was committed with a view, on the part of the telephone company, of contracting debts and defeating them, and no such showing is made.

The mere fact that the debtor telephone company appeared to be operating the telephone line as if it owned it when it was owned by Peebles, its general manager, under the arrangement with him, is in no wise inconsistent with his title nor with good faith on the part of either, when viewed at the time—that is,

October, 1905—such arrangement was instituted, for then neither party was indebted, or, at least, it does not so appear, and no intention to contract debts or defraud anyone may be even inferred from the evidence. Indeed, so far as this record discloses, the Mississippi Valley Telephone Company never at any time owed any debt save this one to Balbach, contracted in 1909-1910, and the mortgage under which its property was sold November 27, 1910, and it does not appear when such mortgage was given. It may be that the property of that company was free from any encumbrance and the company itself from any debt in 1905 for aught this record reveals.

It is obvious that the evidence introduced on the part of defendant does not even tend to justify his detention of the property under the writ of attachment as that of the Mississippi Valley Telephone Company, and the judgment should, therefore, be reversed and remanded with directions to the trial court to enter a finding and judgment in the proper form in replevin for plaintiff. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.