## THE HOME POWDER COMPANY et al., Respondents, v. M. R. LIVELY and OLD JUDGE MINING COMPANY, Appellants.

**Springfield Court of Appeals, June 27, 1914.**

1. **FRAUD: Conveyance in Fraud of Creditors: Evidence: Corporations.** Evidence of a pretended transfer and sale of corporate assets reviewed and the transaction *held* fraudulent as against creditors.

2. ————: **Fraudulent Conveyance by a Corporation: Pretended Sale.** Where defendant corporation pretended to dispose of its property but in reality was operating same through straw men and created the indebtedness to plaintiff after the pretended transfer, the transfer was void as to such subsequent creditors.

3. **MORTGAGES: Consideration: Lack of: When Contract Void.** A contract made absolutely for the benefit of the mortgagor is void.

4. **FRAUD: Fraudulent Conveyance by Corporation: Evidence.** Where a deed of trust, note, bill of sale and assignment evidenced apparently a bona fide sale of corporate property, a letter and agreement of the same date as such instruments, which showed that the transaction was fraudulent as against creditors, were properly admitted in evidence.

5. ————: **Fraudulent Conveyance of Property: Trust Deed: Trustee Proper Party.** Suit to set aside a conveyance evidenced by deed of trust on the ground that same was fraudulent as against creditors. The trustee, though not connected with the transaction further than to be named as trustee, was properly made a party.

Appeal from Jasper Circuit Court. Division No. Two. —*Hon. David E. Blair*, Judge.

AFFIRMED.

*M. R. Lively* for appellants.

(1) It is not sufficient to say in the petition that the deed was fraudulent; there must be a statement

of facts. Burnham v. Boyd, 167 Mo. 185; Loehr v. Murphy, 45 Mo. App. 597. (2) A general allegation of fraud is not sufficient. Reed v. Bott, 100 Mo. 62; Wilkinson v. Goodwin, 71 Mo. App. 394; First National Bank v. Rohr, 138 Mo. 369. (3) In order for the creditors of the grantor to defeat the deed of trust for fraud, it would be necessary to allege facts which would show that it was made by the grantor with a fraudulent intent; and that the grantee had notice of fraud when he purchased. In this instance the petition does not allege that any creditor of the grantor is complaining. Robinson v. Dryden, 118 Mo. 534. (4) The deed of trust in itself being regular on its face, duly recorded, containing no unusual condition, purports a valid consideration, and makes a prima facie case of a valid instrument, the presumption is in its favor. Bank of Boonville v. Volwrath, 135 Mo. App. 66.

No appearance for respondents.

FARRINGTON, J.—A creditors' bill was filed by the plaintiffs to subject to the payment of their two judgments certain property alleged to have been fraudulently transferred by a bill of sale, assignment, deed of trust and notes secured by same, agreement between the stockholders and officers of the Old Judge Mining Company, and a letter written by the stockholders of the Old Judge Mining Company to the alleged purchasers, all bearing date of June 15, 1909. The deed of trust purported to secure notes aggregating six thousand dollars, but the evidence shows that the real consideration was probably fifty thousand dollars. The chancellor granted the relief sought and the defendants have appealed.

The facts of the case may be stated as follows: The Old Judge Mining Company, a Missouri corporation, owned and operated a certain mining mill and machinery on a leased tract of land. Two officers of that company were V. T. Price (president), and C. M.

Olmsted (secretary.). Realto Price, James E. Corlett and H. J. Grotwohl were also stockholders, and some were directors. There was a directors' meeting authorizing a sale of the property to F. C. Stover and F. W. Wonn, one of these parties residing in Chicago and the other in Wisconsin. At this directors' meeting, V. T. Price, the president of the company, was authorized to draw up the proper papers to carry out the deal, the secretary, Olmsted, testifying, "on certain conditions;" he did not remember the conditions, but later in his examination stated two of them. He denied that the president, Price, was ever authorized to execute on behalf of the corporation an instrument hereinafter set forth and referred to as the triplicate agreement, or to write a letter on behalf of the corporation, also referred to. Although he says minutes of the meeting were kept by him as secretary, he does not know what the directors did authorize, and the minute book had been at the time of the trial and for a long time prior thereto in the hands of the officers of the defendant company in Iowa and was not produced at the trial. The appellants naturally would not deny the validity of the deed of trust, assignment of the lease, or bill of sale of all the property of the Old Judge Mining Company, as these are the foundation for their claim on the property under the deed of trust. At all events, the deed of trust, bill of sale, and the assignment of the lease, were executed, which, together with the triplicate agreement and the letter, were sent by the president, V. T. Price, after drawing up the same, to the secretary of the Old Judge Mining Company, Olmsted, and were by him or by his direction recorded in the office of the Recorder of Deeds of Jasper county, Missouri.

It may be said that the assignment, the deed of trust, the notes, and the bill of sale on their face have the stamp of good faith. The property referred to, being all the property of the Old Judge Mining Com-

pany, was sold to Messrs. Stover and Wonn. These
two men took possession of the property and operated
it in their names for quite a while and afterwards by
their direction it was operated in the name of the Red
Wing Mining Company, a corporation. It was while
the property was being operated in the name of the
Red Wing Mining Company that the debts were con-
tracted which were afterward placed in judgment and
which are the basis of plaintiffs' claim in this suit.
Messrs. Stover and Wonn hired a superintendent who
operated the mine for them. It clearly appears in evi-
dence that they directed at a certain time that their
superintendent (Graham) run the mine in the name
of the Red Wing Mining Company, and that they
also informed these creditors that they desired the
account changed from their names to that of the Red
Wing Mining Company. Checks were issued for the
expenses of operation in the name of the Red Wing
Mining Company. There is evidence tending to show
that a contract was made with the Old Judge Mining
Company allowing (as the triplicate agreement pro-
vided) the Red Wing Mining Company to be substi-
tuted for Stover and Wonn, and this agreement was
afterwards returned to Graham, the superintendent
of the mine. The triplicate agreement which was made
on June 15, 1909, the day on which the other instru-
ments referred to were executed, purports to be be-
tween the stockholders of the Old Judge Mining Com-
pany, as parties of the first part, and Stover and Wonn
—the assignees of the property mentioned in the bill
of sale as that of the Old Judge Mining Company—
as parties of the second part. It appears that the
stockholders sold fifty thousand dollars of the stock
less eight shares (which was all of it except the eight
shares) to Stover and Wonn. We here set forth enough
of this instrument to disclose its nature:

"Witnesseth: That parties of the first part being
holders and owners of all stock in the Old Judge Min-

ing Company, save and except eight shares, do in part consideration of the covenants and agreements on the part of second parties contained in a certain trust deed of even date herewith by and between the Old Judge Mining Company and the parties of the second part, hereby covenant and agree to deposit our said stock in the Old Judge Mining Company in the First National Bank of Elkader, Iowa, for the faithful fulfillment and performance of this supplementary agreement.

"The first parties covenant and agree that the cashier of said bank shall issue to second parties receipts for each and all money payments made by second parties to the Old Judge Mining Company pursuant to the terms of the aforesaid trust deed.

"That whenever the trust deed aforesaid shall be terminated in any way, shape or manner, then and in that case parties of the first part on presentation of said receipt or receipts by second parties will transfer and assign to said second parties shares of stock in the Old Judge Mining Company of the par value of the cash payments made pursuant to said trust deed as evidenced by said receipts.

"That parties of the second part shall not by reason of said payments or the said shares of stock so acquired by them or any interest in the Old Judge Mining Company acquired under this contract have any right, claim or interest in, to, or upon the money so paid to the Old Judge Mining Company. It being expressly covenanted and agreed that said payments for the purposes of this contract shall be deemed payments made first party for personal stock in said company and that the proceeds of said payment may be distributed among the first parties in proportion to their several holdings of stock without let, hindrance or objection from second party."

On the same date there was a letter written (which was also recorded in the recorder's office) signed by

the president, V. T. Price, for himself and the stock-holders hereinbefore named. It also throws some light on the character of the transaction under review, and it is therefore set forth:

"June 15, 1909.

"F. C. Stover and F. W. Wonn,

"Dear Sirs: Inasmuch as you contemplate the formation of a corporation for the purpose of taking over the rights and interests acquired by you under the following several instruments, viz., a bill of sale and a deed of assignment (of lease) executed by the Old Judge Mining Company of Oronogo, Missouri, to you, and a personal agreement collateral thereto, all of even date herewith, and for the further purpose of assuming all of your duties and liabilities under said several instruments and under certain notes and deed of trust securing same from you to the Old Judge Mining Company, likewise of even date herewith: Now, therefore, we hereby agree that upon perfecting said corporation at any time before December 1, 1909, with yourselves, F. C. Stover and F. W. Wonn, as the con-trolling stockholders, executive and directing officers of said company or corporation, and the execution by its proper and duly authorized officers of notes and trust deed, the said Old Judge Mining Company, iden-tical with the note and trust deed executed by you and hereinbefore referred to save and except as to date of execution (which shall be the true date), and that your said company shall be substituted for your-selves as parties thereto, but not in any way affecting the time of payments as fixed and governed by the existing notes and deeds of trust and we finding your title rights and interest under several instruments to have been transferred and assigned to your company aforesaid, and to be free from cloud, lien, encum-brance or liability, excepting always those in favor of us and the Old Judge Mining Company, and that all your duties, liabilities under said notes, trust deed,

bill of sale, deed of assignment, and personal agreement collateral thereto have been fully performed and discharged according to the terms of said several instruments, we will accept said notes and trust deed of your said company in lieu and instead of your notes and trust deed aforesaid and cancel and surrender your said notes and trust deed.''

It appears that the property remained in the hands of Stover and Wonn and that the Red Wing Mining Company operated it for a considerable length of time without any interference or apparent concern on the part of the Old Judge Mining Company. Those in charge of the mine were operating it and incurring liability and indebtedness.

It also appears that soon after June 15, 1909, the secretary sent all the books and papers of the Old Judge Mining Company out of this its native State to the president who was in Iowa, and at the time of the trial they were still outside the jurisdiction of the court. The secretary does not know when, if ever, his term of office as secretary expired.

The chancellor rendered a decree finding that the plaintiffs held unsatisfied judgments against the Red Wing Mining Company and that all the instruments hereinbefore named including the letter, all dated June 15, 1909, constituted but one transaction and one contract. Also: ''The court doth further find and adjudge that at the time of the execution of said contract and as part of the agreement between the said F. C. Stover and F. W. Wonn and the Old Judge Mining Company the said F. C. Stover and F. W. Wonn were to organize a corporation or procure a corporate charter and that such corporation should take charge of the property described in the aforesaid instrument of writing designated a trust deed; that such corporation upon taking possession of the said property should bear the same contractual relation to the Old Judge Mining Company that was borne by the said F. C.

· Stover and F. W. Wonn under the terms of the instrument aforesaid; that the said F. C. Stover and F. W. Wonn did in fact organize or call into being the Red Wing Mining Company and under the name of the Red Wing Mining Company as a corporation did in fact take charge and control of the property described in the trust deed aforesaid, and as such corporation and while managing and controlling the said property incurred the indebtedness upon which the plaintiffs' judgments aforesaid were rendered. And the court from the evidence in this case doth find, adjudge and decree that the aforesaid trust deed so as aforesaid described and set forth in the plaintiffs' petition is fraudulent and void as to the creditors of the said Red Wing Mining Company.''

The decree orders the sheriff to pay over enough of the proceeds of a sale theretofore made of the property to satisfy plaintiffs' judgments.

There is ample evidence to sustain the finding of the court in the decree rendered. While the assignment, bill of sale, deed of trust and notes appear to be *bona fide* on their face, the triplicate agreement and letter in the case clearly show that what took place was that the stockholders of the Old Judge Mining Company undertook to sell their shares of stock in that company to Stover and Wonn and agree that any corporation that Stover and Wonn turned the property over to could step into their shoes and take their place. The Red Wing Mining Company did this. It is also shown that the bill of sale and assignment to Stover and Wonn (and by agreement the Red Wing Mining Company) was not a sale of the property of the Old Judge Mining Company because the stockholders of the Old Judge Mining Company in selling out carefully provided in the triplicate agreement that the Old Judge Mining Company was not to get the proceeds of the sale as the money was turned in from operating the mine, but that it was to go to these stockholders

in proportion to the amount of stock they had put up with the bank, but when the consideration for this purported bill of sale was paid by Stover and Wonn or their substitute, the bank was to turn over the stock of the corporation to such purchasers, and the money, which one would naturally think would go into the coffers of the Old Judge Mining Company, was by express agreement kept out of its hands. The consideration for the bill of sale, assignment, deed of trust and notes was in reality only the consideration for the sale of the certificates of the corporation representing its stock.

It is perfectly apparent that the whole scheme was a sale of the certificates of stock which would change the personnel of the stockholders, and that the money that was going to pay them was to come out of the assets of the Old Judge Mining Company in the operation of the mine and lease, and that the mine was in fact operated by the Old Judge Mining Company through these straw purchasers of its assets. The debts of the plaintiffs were made for the Old Judge Mining Company and that company must pay those debts although they were contracted in the name of one of its operative agents.

Here, under the terms of the contract, the money to be paid, ostensibly for the property of the Old Judge Mining Company, was expressly provided to become, not assets of the company which would naturally be expected, but a fund to pay for the certificates of stock. When the full fifty or sixty thousand dollars would have been paid, the company would never have received one cent, and the debt would still have stood under the deed of trust as a *bona fide* charge on the property. It was a contract made absolutely for the benefit of the mortgagor, and was therefore void. [State to use of Kratzer v. Busch, 38 Mo. App. 440.] And even were we to consider the letter and triplicate agreement as not a part of the transaction, they would be extrinsic

evidence of the fraud and purpose of those instruments fair on their face and render the latter fraudulent in law. [Bullene v. Barrett, 87 Mo. 185.] If the bill of sale and deed of trust to secure the payment of the notes were not voluntary and without consideration, it would be hard to conceive of a transaction that is. The company sold, or pretended to sell, all its assets; and so far as keeping up the corporate existence is concerned seems to have failed as the secretary, the only custodian of the books and papers sent them out of the State and did not know whether he was secretary or not at the time of the trial; and although the deed of trust would seem to secure sixty thousand dollars, it appears that not one cent was to go to the corporation. The evidence shows that this defendant company was putting its property out of its hands and at the same time operating the property through straw men and created the indebtedness to plaintiffs after such transfer. As to such subsequent creditors, the transfer was void. [Cole v. Cole, 231 Mo. l. c. 259, 260, 261, 132 S. W. 734; Snyder v. Free, 114 Mo. 360, 21 S. W. 847; Heineman v. Marshall, 117 Mo. App. l. c. 551, 92 S. W. 1131.]

The respondents filed no brief in this court, and nothing contained in appellants' brief convinces us that the transactions between the Old Judge Mining Company and its purported assignees were in good faith.

The rule is a wise one both at law and in equity that whatever fraud creates, justice will destroy. The evidence in this case at least tends to disclose a transaction in which there is a deed of trust made for the purpose of aiding the Old Judge Mining Company in escaping the payment of its just debts.

The defendant M. R. Lively was the trustee named in the deed of trust and for that reason was made a party to this suit, there being no evidence that he was in any other manner connected with the transac-

tions between the Old Judge Mining Company and the purchasers.

The judgment of the trial court is affirmed. *Sturgis, J.,* concurs. *Robertson, P. J.,* concurs in the result.